UNITED STATES of America, Plaintiff,

v.

**Vernon BROWN, Defendant.**

**No. IP 86–69–CR.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 19, 1986.

---

U.S. Atty., Indianapolis, Ind., for plaintiff.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, Ind., for defendant.

## ENTRY

BARKER, District Judge.

This matter is before the court on the August 18, 1986 motion to suppress filed by the defendant, Vernon Brown. The Government filed a response on September 8, 1986, in which it moved for a hearing on the matter. On November 5, 1986, the defendant filed a memorandum in support of his motion. On November 7, 1986, a hearing was held on the motion in open court.

The court, having heard the evidence and the arguments of the parties and having read the defendant's brief, now DENIES the motion to suppress. The reasons for the court's ruling are set forth in the following Memorandum.

### Memorandum

#### I. Background

On May 21, 1986, Indianapolis Police Department Detective Jack Sandlin sought a search warrant for a residence located at 4021 High School Road, Indianapolis, Indiana, from the Honorable Charles Wiles, Judge of the Marion County Municipal Court. In support of his assertion of probable cause to Judge Wiles, Detective Sandlin submitted an eight and one-half page affidavit consisting of thirty-five enumerated paragraphs. The affidavit stated the sources of the information contained within the affidavit, contained many specific details as to an alleged fraudulent scheme perpetrated against various insurance companies by which false claims of loss were submitted for payment, and included as a participant in the scheme was Vernon Brown. In addition, the affidavit stated the manner in which the affiant had learned that Vernon Brown had leased apartments at various addresses as a part of the fraudulent theft-loss scheme. The addresses set forth in the affidavit as those used by insurance claimants included 7843 Rea Road, Apartment 181, Indianapolis, Indiana; 4631 Kathi Drive, Apartment #5, Indianapolis, Indiana; and 4021 North High School Road, Indianapolis, Indiana. Judge Wiles issued the search warrant for the High School Road address, and police officers executed the search on May 22, 1986. No challenge is made by defendant to the legal sufficiency of the initial warrant or search based on that warrant.

Following this search, Detective Sandlin prepared a second affidavit in support of a second search warrant for a residence lo-

cated at 1201 Westminster Row, Apartment #709, Greenwood, Indiana. That affidavit read, in pertinent part, as follows:

That on or about 2/12/86, VERNON L. BROWN did lease apartment #709 at 1201 Westminster Row, Greenwood, Johnson County, Indiana. That an affidavit of probable cause filed on 5/21/86 for 4021 N. High School Road, Indianapolis, Marion County, Indiana, is hereby incorporated as a part of this affidavit by copy. That as a result of the execution of the search warrant at 4021 N. High School Road on 5/22/86, partial records were found which tends [sic] to be evidence of the crimes of forgery and theft. Partial bank records relating to this scheme to defraud insurance companies were located. It is the opinion of your affiant, based upon knowledge learned during the course of this investigation, that other records which are kept as a part of the scheme are under the control of VERNON L. BROWN at the above described premises.

Based on this affidavit, a search warrant was issued by the Honorable A. Toni Cordingley, Judge of the Marion County Municipal Court. The search was conducted, and the defendant now moves to suppress the evidence obtained from the second search.

II. *Discussion*

The defendant argues that the second search warrant is not based upon probable cause for the reason that the affidavit upon which it was based contains nothing but conclusions, and that there is no information relating the alleged crime to the premises to be searched. Given these defects, the officers could not have been acting in objective good faith at the time they obtained or served the second search warrant. The defendant further argues that the officers lacked objective good faith when they applied to Judge Cordingley for the warrant, because Judge Cordingley had a practice of acting as a "rubber stamp" in the issuance of such warrants. Finally, the defendant argues that the materials sought in the search authorized by the second warrant were so broadly described that the warrant was facially invalid.

The Government argues in response that the evidence should not be suppressed based upon a required two-step analysis: First, does the totality of the circumstances suggest a substantial basis for concluding that probable cause existed; secondly, was the evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if ultimately found to be unsupported by probable cause?

The parties correctly acknowledge that *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), provide the necessary, legal backdrop for analyzing the facts in this case. In *Gates*, the police had received an anonymous letter stating that the defendants were drug dealers who would be making a drug deal on a certain date in the near future. The police conducted surveillance of the defendants and discovered that the statements in the anonymous letter regarding times and places were accurate. A search warrant for the defendants' residence and automobile was obtained, based on a police officer's affidavit setting forth these facts and a copy of the anonymous letter.

In reversing the Illinois courts' suppression of the evidence seized pursuant to this warrant, the Supreme Court adopted a "totality of the circumstances" approach for determining whether there is probable cause to support a search warrant. The Supreme Court stated, "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332.

In *Leon*, the police initiated another drug-trafficking investigation involving surveillance of the defendants' activities, based on information from an anonymous informant of unproven reliability. Based on an affidavit summarizing the police officers' observations, an officer applied for a warrant to search for an extensive list of

items thought to exist in three residences and several automobiles. A facially valid search warrant was issued by a state court judge, but the district court, though finding the officer acted in "good faith," nonetheless granted the defendants' motion to suppress the evidence seized pursuant to the warrant because the information on which the warrant was based was stale. The Court of Appeals affirmed, but the Supreme Court reversed the lower courts, holding that the fourth amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate even if the warrant is ultimately determined to be invalid.

*Gates* and *Leon* provide the analytical framework for deciding the issues posed by defendant's motion to suppress in the present case. The court must first decide whether the totality of the circumstances suggest a substantial basis for concluding that probable cause existed for the search of the Westminster address. *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332. If so, the defendant's motion to suppress must be denied. If not, the court must then decide whether the evidence obtained from the search of the Westminster address was obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate. This second determination consists of two components: 1) whether the officers had objective good faith as to the warrant's validity and, therefore, reasonably relied on it, and 2) whether the warrant was issued by a detached and neutral magistrate.

■ Turning to the first inquiry, the court is struck by the paucity of information suggesting that a search of the Westminster address would uncover evidence of wrongdoing. Detective Sandlin testified that no information other than what was set forth in his affidavit was given to Judge Cordingley at the time he applied for the search warrant. Thus, the only basis for Judge Cordingley's decision was the affidavit submitted to her, asserting that probable cause existed.

In that affidavit, the only information relating to the Westminster address is contained in the first sentence: "That on or about 2/12/86, VERNON L. BROWN did lease apartment # 709 at 1201 Westminster Row, Greenwood, Johnson County, Indiana." There is no statement explaining how Detective Sandlin reached that conclusion, nor is there any suggestion of the relevance of that address to the insurance fraud scheme described in the previous affidavit which was incorporated into this affidavit by reference. As such, the statement is completely deficient as supportive of probable cause to conduct a search of that address.

The Government argues that the previous affidavit, incorporated by reference, demonstrates a pattern of using numerous addresses to effect the theft loss insurance fraud scheme. Therefore, it argues Judge Cordingley could reasonably find that probable cause existed to search a new address shown to have been leased by the defendant on or about a given date. This argument, however, if correct, would have allowed the police to obtain a warrant to search *any* residence or apartment whatsoever, by simply alleging that it had been leased by an alleged participant in the insurance fraud scheme. Such a result is untenable, if there is to be any lawful restraint on the police search powers.

If Detective Sandlin had a basis for believing that Vernon Brown had leased the apartment on Westminster Row, then all he had to do was include the basis in his affidavit. That he knew how to do so is evidenced by his affidavit submitted to obtain a warrant to search the High School Road residence. In paragraphs 34 and 35 of that affidavit, Detective Sandlin stated how he had checked telephone company and electrical utility company records to ascertain the occupant of the High School Road residence. Mere conclusions, as used in the affidavit pertaining to the Westminster Row address, will not suffice. *Aguilar v. State of Texas*, 378 U.S. 108, 113–114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964).

■ It is clear, therefore, that the totality of the circumstances in this case did not suggest a substantial basis for concluding that probable cause existed. Having so found, the court turns now to the question of whether the officers acted in reasonable reliance on a search warrant issued by a detached and neutral magistrate, thereby justifying a decision not to exclude the evidence. The Supreme Court has stated,

It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.

*Leon,* 104 S.Ct. at 3419. Therefore, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness," *Gates,* 462 U.S. at 267, 103 S.Ct. at 2347, although "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Leon,* 104 S.Ct. at 3421. In other words, "the inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered." *Id.* at n. 23.

In the present case, there simply are no circumstances to suggest that the police, in executing the search, acted without objective, reasonable reliance on the search warrant issued by Judge Cordingley for the Westminster address. There is no evidence that they sought to have the warrant executed by Judge Cordingley after having been denied the warrant by another judge. Nor is there any evidence that the officers sought to obtain the warrant by misleading the magistrate with information they knew to be false or would have known was false except for their reckless disregard of the truth.

■ The defendant argues that the warrant so clearly failed to particularize the things to be seized that the officers could not reasonably presume it to be valid. Such a contention, however, is unsupportable by the evidence. The warrant authorized a search for "[s]tore receipts, fraudulent store receipts, bank records, typewriters, and letters of correspondence relating to the submission of fraudulent insurance claims." There is nothing ambiguous about store receipts, bank records, or typewriters. As for the issue raised by defendant that the police officers were improperly permitted to rely on their own discretion to decide what constitutes "fraudulent" store receipts, there is no problem. The police were authorized to search for and seize *all* store receipts; accordingly, there was no need for the officers to exercise discretion in this regard. Finally, the authorization to search for letters relating to the submission of fraudulent insurance claims could hardly have been more specific. The warrant did not allow a search for all letters or even all letters to insurance companies. The letters had to relate to the submission of fraudulent insurance claims. The warrant did not give the executing officers "complete discretion," as alleged by the defendant. In sum, the officers' reliance on the warrant was objectively reasonable.

■ The final inquiry directed to the court is whether Judge Cordingley acted as a detached and neutral magistrate or whether she acted as a "rubber stamp" for the police. "A magistrate failing to 'manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application' and who acts instead as 'an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search." *Leon,* 104 S.Ct. at 3417, *citing, Lo–Ji Sales v. New York,* 442 U.S. 319, 326–27, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920 (1979).

The defendant argues that Judge Cordingley was a "rubber stamp magistrate" because she routinely found probable cause based upon "form" affidavits for search

warrants. Defendant's Brief at p. 9. In support of his argument, the defendant introduced (as Defendant's Exhibits 5 and 6 at the hearing on this motion) copies of hundreds of search warrants issued by Judge Cordingley and their accompanying affidavits.

However, defendant's contention fails for several reasons. First, the defendant has not shown which, if any, of the submitted affidavits and warrants were constitutionally invalid. As evidence adduced in this cause, the warrants more convincingly prove that Judge Cordingley has extraordinary experience in reviewing warrant applications because of the volume of applications submitted to her, rather than that she routinely issues invalid warrants.

Second, evidence that Judge Cordingley signed other invalid warrants, if in fact she did, does not suffice to prove that she signed an invalid warrant in this instance, a point defendant concedes. Nonetheless, he asserts "that when, as here, the magistrate routinely approves boiler plate affidavits and when, as here, the instant affidavit for search warrant was so patently invalid, the only reasonable conclusion is that the magistrate was acting as a 'rubber stamp.' " Defendant's Brief at p. 9. Defendant's argument, however, fails for want of evidence to support it. Alleging that Judge Cordingley "routinely approves boiler plate affidavits" and proving it are two separate matters.

Third, no evidence was offered by defendant, or admitted to establish the number of warrants *dis* approved by Judge Cordingley during the periods of time covered by the warrants she did issue (July 1, 1985 through July 15, 1986). Judge Cordingley testified that she did deny applications for warrants during this period of time. Surely a comparison of the number of warrants she issued with the number of warrants disapproved would tend to establish whether or not she was a "rubber stamp."

Fourth, no evidence was adduced by defendant, in support of his contention that Judge Cordingley acted as a "rubber stamp" in approving applications for search warrants, to prove that her practices and procedures had previously been challenged, thus placing the police officers on notice to that effect. Such notice to the executing officers, if it could be shown, would support a finding of a lack of objective good faith on their parts, requiring suppression of evidence seized pursuant to a warrant issued in that fashion.

Finally, the court's own review of the affidavits submitted as Defendant's Exhibit 5 reveals that, for the most part, the affidavits are clearly not "boiler plate affidavits." For example, some of the affidavits set forth information obtained from confidential informants who had seen drugs inside certain residences. Other affidavits set forth claims that stolen property was believed to be located at a particular place of business based on information received from an unknown informant and confirmed by personal observation of the affiant police officer. Not only does the wording of each affidavit differ (often greatly), but the actual forms on which the sworn statements are made are not even always identical. In sum, the defendant's argument that Judge Cordingley routinely approves "boiler plate affidavits" is totally unsubstantiated by the evidence.

### III. *Conclusion*

The warrant to search the Westminster Row address was not based upon a sufficient showing of probable cause. However, the officers executing the search had an objectively reasonable good faith belief that the warrant was valid and that it had been properly issued by a neutral and detached magistrate. Therefore, the evidence seized pursuant to the warrant should not be suppressed, and defendant's motion is DENIED.