**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jose Robert GOMEZ–SOTO, Defendant-Appellant.**

**No. 82–1459.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 1983.

Decided Jan. 9, 1984.

Eric J. Swenson, Sandra Teters, Asst. U.S. Attys., San Francisco, Cal., for plaintiff-appellee.

Kenneth M. Quigley, San Francisco, Cal., for defendant-appellant.

Before CHOY and NORRIS, Circuit Judges, and CURTIS,* District Judge.

CURTIS, District Judge:

Appellant Gomez-Soto (Gomez) appeals his conviction of violating Title 21 U.S.C. § 963 [conspiracy to import cocaine]; Title 21 U.S.C. § 846 [conspiracy to distribute cocaine]; and three counts of violating Title 26 U.S.C. § 7201 [income tax evasion]. Gomez was tried and convicted by the court below, sitting without a jury.

Gomez asserts that: (1) the evidence seized by virtue of the March 19, 1981 search warrant was improperly admitted against him, because the warrant authorizing the search was so general in nature as to violate the fourth amendment; (2) closed containers found within the area to be searched, but not particularly described on the face of the warrant, were impermissibly searched and the contents seized; and finally, there was insufficient evidence to convict him of income tax evasion, as the government used the "net worth" method of computation without a proper foundation.

Believing as we do that none of these contentions have merit, we affirm.

### STATEMENT OF FACTS

On March 19, 1981, a warrant ** was issued authorizing the search of Gomez's

---

* The Honorable Jesse W. Curtis, United States District Judge for the Central District of California, sitting by designation.

** The search warrant authorized the seizure of the following items:

1. Cancelled checks, bank statements, currency transaction reports, receipts, notes, money orders, cashier's check applications or any other record, entry or paper showing any transaction since 1976, involving cash or currency in excess of $5,000 (for transactions involving movements of cash into or out of the United States) or $10,000 (for domestic transactions);

2. Books, papers, records, receipts, documents, notations, diaries, journals or ledgers showing receipt, expenditure, or availability of substantial amounts of currency, cash or money since January 1, 1976;

3. All business records, books, papers, and documents showing the date, destination, origin, shipping line, customer, and price paid for

any shipment since January 1, 1976, of door panels, or other wood products, from Columbia to the United Statess. (sic)

4. Representative original samples of handwriting, including writings in the Spanish language;

5. A gold Rolex man's watch, engraved "J.R.G.";

6. Cancelled checks, bills, receipts, payment vouchers, and other papers indicating true place of residence and citizenship of Jose Robert Gomez-Soto;

7. Passports, airline ticket receipts, and other papers relating to travel outside the United States by Jose Robert Gomez-Soto;

8. Books, papers, records, and documents relating to any business transactions since January 1, 1976, in the United States by or on behalf of Jose Robert Gomez-Soto, Corporacion Financiera San Francisco Limitada, Industria De Maderas, Frederick Coffee Company, Mad-

home in Woodside, California, based upon an affidavit submitted by a DEA agent.

In executing the warrant, among the objects found on the premises and subsequently searched and seized were a Gucci bag (characterized in the argument as a "briefcase") and a microcassette tape. The Gucci bag was locked. Gomez was asked for the combination of the lock, and upon his declaration of his inability to recall it, the agents cut open the bag and seized its contents, which, in fact, was cocaine. The microcassette was found on top of a dresser in the bedroom closet and contained statements incriminating Gomez.

On March 26, 1981, two more search warrants were issued. The first authorized a further search of the Gomez residence, and the second called for the search of a safe deposit box in the Menlo Park branch of the Bank of America. The affidavit submitted in support of the second set of warrants contained a recitation of facts gleaned from the earlier search. Thus, if the March 19 warrant is overbroad, the fruits of the second set of warrants must be suppressed as tainted.

At the trial, in seeking to determine Gomez's tax liability, the "net worth" method was used. In its computation, the government assumed that the assets of three Columbian corporations were the personal assets of Gomez. According to the affidavit, the appellant and his wife were the sole signators on the bank accounts of the corporations, the corporations' addresses were that of the appellant, and a number of items of a personal nature (automobile, ja-

cuzzi, liquor, antiques, toys, etc.) were paid for out of these accounts. There was no evidence that the accounts were used for a business purpose. The corporations were purportedly in the lumber export trade, but, in fact, were means by which the appellant smuggled cocaine into the United States in the inside of hollow wooden doors and posts.

## THE WARRANT WAS NOT OVERBROAD

Understandably the appellant makes no contention that the warrant lacks probable cause, for the underlying affidavit sets forth in great detail and particularity the nature and scope of appellant's activities. Appellant contends only that the warrant is so non-specific and overbroad as to constitute a "general warrant" prohibited by the Fourth Amendment of the United States Constitution, which provides in relevant part:

[A]nd no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

█ It was, of course, fear of general warrants and indiscriminate rummaging among personal belongings which motivated the adoption of the fourth amendment. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure

---

eras Victoria Limitada, and Otoya Instant Coffee Company;

9. Books, records, papers, documents and notations relating to or discussing transactions or arrangements for distributing, selling or importing cocaine or other controlled substances, including income or profits therefrom and any arrangements for splitting such income or profits or arrangements for paying or transporting such controlled substances;

10. Any papers, books, records, documents showing utilization, ownership or scheduling of private airplane flight into or out of the United States any time since January 1, 1976.

11. Agreements, articles of incorporation, certificates or other papers showing partner-

ship, joint venture, corporate, or other status, including ownership and control, for any entity or organization engaged at any time since January 1, 1976, in importing wood products into the United States from Columbia, or in transferring cash or currency in excess of $5,000 into or out of the United States;

12. Papers, including currency, evidencing failures to file currency transaction reports as required by Title 31, United States Code; and

13. Any controlled substances, containers or conveyance therefor, and all other instrumentalities and fruits of unlawful importing or distributing of controlled substances.

of one thing under a warrant describing another. As to what is taken, nothing is left to the discretion of the officer executing the warrant.

*Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). Although technical precision of description is not required, *United States v. Drebin,* 557 F.2d 1316, 1322 (9th Cir.1977), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978), the warrant must so circumscribe an officer's actions that the issuing magistrate can determine that the "search in all of its dimensions is based upon probable cause and particular descriptions." *United States v. Hillyard,* 677 F.2d 1336, 1339 (9th Cir. 1982).

Although appellant challenges the entire warrant, he makes particular reference only to the broad descriptions of Items 4, 6, 7, 8 and 12, which we discuss seriatim.

■ Item 4 authorizes the search for and seizure of "representative original samples of handwriting, including writings in the Spanish language." Only an overly-technical reading could render Item 4 insufficiently particular. "Representative," although indicating no precise number, connotes a limited number of papers. Read in light of its purpose—to obtain a handwriting exemplar—Item 4 authorizes the seizure of only a very limited number of papers. Furthermore, since the samples were sought for the limited purpose of handwriting comparison, a magistrate could not be expected to describe any more particularly the specific papers to be seized.

■ Item 6 authorizes the seizure of documents indicative of appellant's residence or citizenship. This item specifically describes the types of documents sought and describes the contents thereof. In *United States v. Honore,* 450 F.2d 31 (9th Cir.1971), *cert. denied,* 404 U.S. 1048, 92 S.Ct. 728, 30 L.Ed.2d 740 (1972), we upheld against a particularity challenge, a warrant including a similar description. The *Honore* warrant authorized the seizure of "articles . . . tending to establish the identify [sic] of persons in control of the premises . . . including but not limited to utility company receipts, rent

receipts, cancelled mail envelopes, and keys." 450 F.2d at 33. Item 6 is no less particular.

■ Appellant objects to the description in Item 7 which calls for the seizure of records of international travel. Appellant contends that the lack of limitation as to time renders the item overbroad. However, testing Item 7 in a "commonsense and realistic fashion," as we must, (*United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)), it is valid. Unlike most of the descriptions in this warrant, Item 7 was not expressly limited to events occurring after January 1, 1976. Any international travel records available would, however, likely be related to appellant's current or recent activities—activities well within the scope of the probable cause underlying the warrant.

■ Item 8 authorizes the seizure of any documents relating to any business transactions of either the appellant or the three separate corporations for the previous five years. This item is particularly definitive, and we have upheld similar warrants. *United States v. Offices Known as 50 State Distrib.,* 708 F.2d 1371, 1374 (9th Cir.1983). The fact that it authorizes the seizure of a large quantity of material is justified by probable cause supplied by the affidavit from which it appears that the appellant's sole business was trafficking in narcotics.

Item 12 is strenuously objected to by the appellant. It calls for papers, including currency, evidencing failures to file currency transaction reports as required by Title 31 U.S.C. Appellant argues that the limitation by way of statutory reference alone renders the description impermissibly vague, and cites *United States v. Roche,* 614 F.2d 6 (1st Cir.1980) and *United States v. Cardwell,* 680 F.2d 75 (9th Cir.1982), for the proposition that a warrant phrased in terms seeking instrumentalities or evidence of a general statutory violation is unconstitutional.

■ In *Cardwell,* we found insufficiently particular a warrant calling for "books and

records ... which are the fruits and instrumentalities, of violations of 26 U.S.C. § 7201." 680 F.2d at 76. We explained that " 'limiting' the search to only records that are evidence of the violation of a certain statute is generally not enough.... If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of what may or may not be seized." *Id.* at 78. As did the warrant in *Cardwell,* Item 12 lacks objective guidelines to aid the determination of what may or may not be seized and is thus unconstitutionally vague.

■ In reaching this result, we do not ignore the admonition that "the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). A general description may be acceptable in a warrant if a more precise description is not possible. *Cardwell, supra,* 680 F.2d at 78; *VonderAhe v. Howland,* 508 F.2d 364, 370 (9th Cir.1975). Item 12, however, could have been drafted more precisely. Since the DEA sought articles it claims are typically found in the possession of narcotics traffickers, the warrant could have named or described those particular articles. Here, as in *Cardwell,* the government could have drafted a warrant to get what it wanted without authorizing an exploratory general search. *Cardwell, supra,* 680 F.2d at 78; *see also VonderAhe, supra,* 508 F.2d at 370.

■ Our conclusion that Item 12 is impermissibly general does not, however, require the invalidation of the entire March 19 warrant. This court has embraced the doctrine of severance, which allows us to strike from a warrant those portions that are invalid and preserve those portions that satisfy the fourth amendment. Only those articles seized pursuant to the invalid portions need be suppressed. *Cardwell, supra,* at 78; *see also United States v. Christine,* 687 F.2d 749 (3d Cir.1982).

In this warrant, Item 12 is only one of thirteen descriptions, twelve of which are sufficiently particularized. It is practicable, therefore, for us to sever Item 12 from the warrant and uphold the portion that remains. Since there is no indication in the record before us that there was any material seized pursuant to the warrant which did not come within the descriptions of the valid portions thereof, we uphold the search.

## SEARCH AND SEIZURE OF GUCCI BAG AND MICROCASSETTE

Appellant objects to the search and seizure of the briefcase, the microcassette and their contents on the ground that they were not particularly described in the warrant. Appellant argues by analogy from the long line of automobile luggage search cases contending that a separate warrant is necessary to open a locked container found within a larger container. Appellant characterizes the cassette as a locked container openable only by playing it on a tape player.

The cases involving locked luggage in automobiles are not in point, for those all deal with *unwarranted* searches of automobiles which have been allowed under exceptional circumstances. The right to conduct that type of an unwarranted search has never been extended to locked containers found within them.

■ The search and seizure of both the microcassette and the briefcase were proper. It is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant. *United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170, 72 L.Ed.2d 572 (1982); 2 La Fave, *Search & Seizure* § 4.10(b) at 154 (1978); *United States v. Gentry,* 642 F.2d 385 (10th Cir. 1981) [warrant for drugs in certain premises authorized search of briefcase located therein]; *United States v. Morris,* 647 F.2d 568, 573 (5th Cir.1981) [no separate warrant required to open locked jewelry box found

inside residence searched pursuant to valid warrant].

■ The briefcase would be a logical container for any of the many things specifically described in the warrant. A microcassette is by its very nature a device for recording information in general whether it be statistical information, conversations, past events, future plans, all of which come clearly within the specific authority of the warrant. The failure of the warrant to anticipate the precise container in which the material sought might be found is not fatal.

The appellant suggests that since a greater right to privacy exists in a home than in a place of business, a warrant authorizing a search of a home should be more specific so as not to unduly invade the privacy which one expects in a home. It may be that authorization of a search of a home requires a stronger showing of probable cause than for a search of a place of business, but when probable cause is one established for the search wherever it is to be, the difference disappears. Admittedly, in the case at hand, there was probable cause for a warrant to search the home where the illegal transactions were being carried out, and the warrant was sufficiently specific to permit the search of the briefcase and the seizure of the tape.

## EVIDENCE OF INCOME TAX EVASION SUFFICIENT TO SUSTAIN CONVICTION

On a challenge to the sufficiency of the evidence, the standard of review is whether there is substantial evidence, taken in the light most favorable to the government, supporting the conviction. *United States v. Basey,* 613 F.2d 198 (9th Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 274 (1980).

■ In proving the elements of the crime of tax evasion by the "net worth" method, the government is required to: (1) accurately establish the defendant's opening net worth; (2) identify a likely source of taxable income from which it may be inferred that the defendant's net worth arose; and (3) conduct a reasonable investigation of any leads that suggest the defendant properly reported his income. These requirements are imposed because of the nature of the net worth method of proof. Evidence in these kinds of cases must be carefully reviewed bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation. *United States v. Hamilton,* 620 F.2d 712, 714 (9th Cir.1980).

The appellant challenges the government's assumption that the assets of the three Columbian corporations were indeed the assets of the appellant. The appellant asserts that the government put on no proof as to the foundation of this assumption, and thus there is no substantial evidence to support the conviction below.

■ However, the government need only identify a "likely" source of taxable income from which it may be *inferred* that the defendant's increase in net worth arose. In this case the government put on such evidence. Appellant contends that the government must establish an alter ego relationship between the defendant and the corporations. *Hamilton, supra,* 620 F.2d at 714, makes it clear that the government does not have to go that far. "The government is not required 'to embark on a Magellan-like expedition in order to prove that the unreported income was taxable.' It need not 'negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant.' The principle remains that once the government has established its case, the defendant remains silent at his peril." *Id.*

Viewing the entire evidence in the light most favorable to the government, there is substantial evidence to find the appellant guilty beyond a reasonable doubt.

The appellant's conviction in the court below is affirmed.