**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Vernon BROWN, Defendant–Appellant.**

**No. 87–1435.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1987.

Decided Oct. 22, 1987.

Rehearing and Rehearing En Banc Denied Nov. 23, 1987.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, Ind., for defendant-appellant.

Jackie M. Bennett, Asst. U.S. Atty. (John Daniel Tinder, U.S. Atty.), Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

On January 29, 1987, Vernon Lloyd Brown pleaded guilty[1] to five counts of mail theft and one count of possession of a firearm by a convicted felon. 18 U.S.C. § 1708, 18 U.S.C.App. § 1202(a)(1). The district court accepted his plea and imposed an earlier agreed-upon five-year sentence. Brown now appeals that court's November 19, 1986, denial of his motion to suppress evidence seized pursuant to a search warrant, 671 F.Supp. 1205 (D.C.Ind.1986). Applying the Fourth Amendment analysis as provided by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), we hold that the police officers executing the search of Brown's apartment had an objectively reasonable good faith belief that the warrant was based on probable cause and valid and that it had been properly issued by a neutral and detached magistrate. Accordingly, we affirm.

## I.

Because both the defendant and the investigating officer, Detective Jack Sandlin of the Indianapolis Police Department, had earlier dealt with each other in a similar matter which formed part of Sandlin's later

---

1. This was a conditional plea preserving his right to appeal an adverse ruling on his motion to suppress. See Rule 11(a)(2) of the Federal Rules of Criminal Procedure.

determination of probable cause to search Brown's residence, it is important to describe the factual background of this case. In March of 1983, Brown was convicted of forgery under Indiana law for participating in a scheme to defraud insurance companies. Using false names, Brown would obtain automobile policies from various insurance companies. The addresses he provided to these companies in his insurance applications primarily consisted of apartments he rented for six-month periods.

Next, Brown would file false reports of break-ins and thefts to the police departments in the several states where he allegedly resided. After the police officers investigated these reports, Brown then made stolen property claims to the insurance companies regarding the supposed automobile thefts. While the individual claims in each reported theft involved low dollar amounts, the aggregate sum of money received by Brown was substantial. Using various aliases, he was able to deposit the reimbursement checks from the insurance companies in a bank clearing account held by a purported business entity with Brown as an authorized signator. Sandlin's investigation of these activities eventually led to Brown's 1983 Indiana forgery conviction and subsequent three-year sentence. The defendant was paroled in September of 1984.

Approximately one year later, in the fall of 1985, Sandlin commenced another insurance fraud investigation involving Brown in a nearly identical scheme to that which resulted in his earlier incarceration. On May 21, 1986, Sandlin sought a search warrant for a residence at 4021 North High School Road in Indianapolis, Indiana. Believing that Brown used this address to further his insurance fraud scheme, Sandlin submitted an eight and one-half page affidavit which stated the sources of the information relied on, related the details of the scheme, and named Brown as a scheme participant. The day after Municipal Court Judge Charles Wiles issued the search warrant, the police officers searched the High School Road residence and later arrested Brown. When Brown refused to consent to a search of his apartment at 1201 West-

minster Row, Apartment #709, in Greenwood, Indiana, Sandlin prepared a second search warrant affidavit which stated in part:

> In support of your affiant's assertion of Probable Cause, the following facts are within your affiant's personal knowledge, to-wit: That on or about 2/12/86, Vernon L. Brown did lease apartment #709 at 1201 Westminster Row, Greenwood, Johnson County, Indiana. *That an affidavit of probable cause filed on 5/21/86 for 4021 N. High School Road, Indianapolis, Marion County, Indiana, is hereby incorporated as a part of this affidavit by copy.* That as a result of the execution of the search warrant at 4021 N. High School Road on 5/22/86, partial records were found which tends to be evidence of the crimes of forgery and theft. Partial bank records relating to this scheme to defraud insurance companies were located. It is the opinion of your affiant, upon knowledge learned during the course of this investigation, other records which are kept as a part of the scheme are under control of Vernon L. Brown at the above described premises. (Emphasis supplied).

Sandlin then described the desired items to be seized in the same manner as in the earlier warrant, specifying "Store receipts, fraudulent store receipts, bank records, typewriters, and letters of correspondence relating to the submission of fraudulent insurance claims." Relying on this affidavit, Municipal Court Judge A. Toni Cordingley issued a search warrant approximately one hour and fifteen minutes after the end of the first search on May 22. While searching the 1201 Westminster Row address later that day, Sandlin found a briefcase which contained a handgun and a manila folder that contained five pieces of stolen mail. Nothing else was seized.

Brown was subsequently indicted by a federal grand jury on five counts of mail theft and one count of wrongful possession of a firearm by a prior felon. On August 19, 1986, he moved to suppress the evidence seized at the Westminster Row address, alleging that the second search was

illegal. After taking testimony from both Sandlin and Judge Cordingley, the district court denied this motion on November 19, 1986, and held that while the second warrant to search the Westminster Row address was not based on probable cause under the "totality of the circumstances" test of *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 257 (1983), (1) the officers executing the warrant had an objectively reasonable good faith belief that the warrant was based on probable cause and valid, (2) the warrant did describe the items to be seized with sufficient particularity, and (3) Judge Cordingley did not act as a mere "rubber stamp" for the police officers.

## II.

■ We do not dispute both the defendant's argument and the district court's conclusion that the totality of the circumstances in this case did not establish a substantial basis for concluding that probable cause existed to search the second address. For example, as the district judge noted, neither search warrant affidavit showed how the police knew that the Westminster apartment was truly one of Brown's addresses. Also there was a paucity of information suggesting that a search of the Westminster address would uncover evidence of wrongdoing. If the affidavit had shown that this address was truly Brown's and had been one of his mail-drops, there of course would have been probable cause. But because of the absence of probable cause, it is necessary to decide whether the officers acted in reasonable reliance on the validity of a search warrant issued by a detached and neutral magistrate. We rely here on the analysis provided in *Leon,* 468 U.S. 897, 104 S.Ct. 3405, where the Supreme Court adopted a good faith exception to the exclusionary rule. The Court held that:

In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Leon,* 468 U.S. at 926, 104 S.Ct. at 3422.

In adopting this good faith exception, the Court reasoned that when an officer has in good faith relied on a neutral magistrate's seemingly valid warrant, the exclusion of the resulting evidence would not further the deterrence purpose of the exclusionary rule. 468 U.S. at 920–921, 104 S.Ct. at 3419. It was even thought that the creation of such an exception "may well increase the care with which magistrates scrutinize warrant applications." *Id.* at 917–918 and n. 4, 104 S.Ct. at 3410 n. 4.

Brown has never claimed that Detective Sandlin was either dishonest or reckless in preparing his affidavit. He does assert, however, that the warrant was so facially deficient that the executing officer could not presume it to be valid. Attempting to apply the two-part test defined in *United States v. Klein,* 565 F.2d 183, 188 (1st Cir.1977), a case decided prior to *Gates* and *Leon,* he contends first that the affidavit did not indicate that contraband might be present, so that the warrant was completely devoid of probable cause, and second, that the warrant's language was too general to provide the detectives with criteria for distinguishing the contraband from the rest of his possessions. Brown also argues that Judge Cordingley was merely a "rubber stamp" magistrate who abandoned her neutral and detached role. We deal with each contention in turn.[2]

### A. *Lack of Indicia of Probable Cause*

■ In *Leon,* the Court held that it would not be objectively reasonable for the

---

**2.** Since we hold under *Leon* that the search was ultimately proper pursuant to a warrant, there is no need to reach the Government's response that the officers properly seized stolen mail and a firearm under the plain view doctrine. Cf. *United States v. McDonald,* 723 F.2d 1288, 1290 (7th Cir.1983) (seizure of stolen mail in plain view proper during search pursuant to warrant authorizing seizure of cocaine); see also *United States v. Nechy,* 827 F.2d 1161, 1165 (7th Cir. 1987) ("once properly engaged in search[ ] ... government could seize any evidence of crime that it saw").

police to rely on a search warrant when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 468 U.S. at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (Powell, J., concurring)). Police officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles. *United States v. Savoca,* 761 F.2d 292 (6th Cir.1985), certiorari denied, 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 126. The Government here contends that the *Leon* "no indicia of probable cause" contradiction of good faith does not apply in Brown's case because the second warrant was a reasonable extension of the first whose affidavit it expressly incorporated.[3] Brown responds that the second affidavit was so conclusory as to be deficient under the *Gates* "totality of the circumstances" test, and that Sandlin should be charged with knowing that the law prohibited using such an affidavit devoid of any semblance of probable cause. *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23.

■ Brown, however, presented absolutely no evidence that the police acted without objective reasonable reliance on the exhaustive first search warrant affidavit as incorporated in the second. He also failed to support his contention that Sandlin misled the magistrate with information he knew to be false or that Sandlin did not believe that there was sufficient probable cause to search the Westminster address. "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness," *Gates,* 462 U.S. at 267, 103 S.Ct. at 2347, yet even under an examination into Sandlin's awareness of potential illegality, Brown did not show that Sandlin, a welltrained officer, would know that the search was illegal despite Judge Cordingley's authorization.

The second affidavit showed that partial records, including bank records, were found in the earlier search of Brown's High School Road apartment, tending "to be evidence of the crimes of forgery and theft" and "relating to the scheme to defraud insurance companies." As a result of knowledge he obtained during his investigation, affiant Sandlin considered that other records kept "as a part of the scheme" would also be found at Brown's Westminster Row apartment, thus satisfying the first branch of the First Circuit's *Klein* opinion upon which Brown relies. In other words, facial indicia of probable cause were present even though the second affidavit did not reveal how Sandlin learned that Brown was the lessee of Apartment 709 at 1201 Westminster Row. See *United States v. Nechy,* 827 F.2d at 1167 ("if a search is objectively reasonable, the motives of the officers conducting it will not turn it into a violation of the Fourth Amendment"). The district judge concluded that the executing officers had acted with "objective, reasonable reliance on the search warrant issued by Judge Cordingley *for the Westminster address.*" (Emphasis supplied). At the November 7, 1986, hearing on the motion to suppress, Brown conceded that he possessed or had an interest in the apartment there. (Brown Br. 7). At the final hearing, Government witness Kochy, the postal inspector assigned to the investigation, testified without contradiction that said apartment belonged to Brown. His principal brief before us does not challenge any lack of basis for affiant Sandlin's statement in the second affidavit that Brown was the lessee of the Westminster Row apartment. His reply brief does mention that Sandlin's statement was too conclusory to support probable cause (Reply Br. 3–4), and we do not demur. But the question before us is whether the second warrant and affidavit lacked the indicia of probable cause. Brown attempts no such showing. Since on its face the second affidavit listed Brown as the Westminster Row lessee and the police had no contrary infor-

---

**3.** Brown does not contend that the first search warrant, which has never been attacked, lacked

probable cause.

mation, the *Leon* good faith exception was properly applied by the court below.

### B. *General Description*

■ Brown's second major assertion is that the good faith doctrine does not apply since the warrant did not describe as precisely as possible the items to be seized as required by the second branch of *Klein.* The Fourth Amendment admittedly prohibits general or open-ended warrants. See *Dalia v. United States*, 441 U.S. 238, 255, 99 S.Ct. 1682, 1692, 60 L.Ed.2d 177 (1979). It requires that a search warrant particularly describe both the place to be searched and the persons or things to be seized. U.S. Constitution Amend. IV; see also Fed. R.Crim.P. 41(c)(1) (magistrate "shall issue a warrant identifying the property or person to be seized and naming or describing the person or place to be searched"). This mandate circumscribes the scope of a search and seizure as well as safeguards an individual's privacy interest against a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971); *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed 231 (1927). Nothing is meant to be left to the discretion of police officers executing the warrant. *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431. In practice, courts have therefore demanded that the executing officers be able to identify the things to be seized with reasonable certainty and that the warrant description must be as particular as circumstances permit. *United States v. Bentley*, 825 F.2d 1104, 1110 (7th Cir.1987).

■ A warrant may contain a catchall phrase as long as it sufficiently limits the discretion of the officers in executing the warrant. See *Andresen v. Maryland*, 427 U.S. 463, 479–82, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627 (1976). For example, in *United States v. Reed*, 726 F.2d 339, 342 (7th Cir.1984), this Court held that a warrant authorizing seizure of "any other papers indicating proof of residency" in connection with a search for other named contraband was sufficiently particular because such proof could be both easily recognized and quickly found.

■ As did the first, the second warrant in this case authorized a search for "store receipts, fraudulent store receipts, bank records, typewriters,[4] and letters of correspondence relating to submission of fraudulent insurance claims." Brown claims that this language left it to police officer discretion to determine what was a fraudulent store receipt and what was correspondence relating to the submission of fraudulent insurance claims. As pointed out by Judge Barker, the second warrant also included "store receipts," not just fraudulent store receipts, thus puncturing Brown's initial criticism. Since the Fourth Amendment prescribes "particularly describing * * * things to be seized," the executing officers surely cannot be faulted for confining the requested letters to those "relating to the submission of fraudulent insurance claims," as even more specifically elucidated by reference to the first eight and one-half page, 35-paragraph incorporated search warrant affidavit. Indeed, absent such a limitation defense counsel's criticism surely would have been even more carping.

If this search warrant were somehow deemed to lack sufficient particularity, it was surely cured by the accompanying supportive affidavit (*Massachusetts v. Sheppard*, 468 U.S. 981, 990 n. 7, 104 S.Ct. 3424, 3429 n. 7, 82 L.Ed.2d 737 (1984)) which incorporated all of the relevant information contained in the first search warrant affidavit, a practice we have previously deemed proper. *United States v. Gusan*, 549 F.2d 15 (7th Cir.1977), certiorari denied, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). The affidavit in the first warrant disclosed *inter alia* that a bank clearing account was used to assist Brown in laundering the fraudulently obtained insurance proceeds and that there were typewritten submissions of purported theft losses. Brown's scheme to submit fraudulent insurance claims is described in detail. The second search warrant affidavit shows that

---

**4.** The re-incorporated affidavit for the first search warrant refers to false typewritten lists of stolen articles.

the Government was merely seeking evidence of the crimes of forgery and theft. It is sheer cavil to contend that in the light of both affidavits, there was an insufficient description of the items being sought. We agree with the district court that sufficient criteria were present to identify the items to be seized. That is apparent from defendant's failure to assert that the few items seized were beyond the confines of the warrant.

### C. "Rubber Stamp" Theory

■ On appeal, Brown again claims that Judge Cordingley acted as a mere rubber stamp for the police, thereby abandoning her neutral and detached role as a magistrate. Because the judge supposedly routinely found probable cause based upon "form" affidavits submitted for search warrants, she therefore could not provide valid authorization for an otherwise unconstitutional search. See *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422. These affidavits allegedly offered no principled basis to determine if in fact probable cause existed. Brown submitted into evidence literally hundreds of search warrants issued by Judge Cordingley as well as their accompanying affidavits. He tried to raise the inference that the police officers were aware of the judge's alleged tendency to approve warrants without critical analysis. We agree with the district court that the evidence submitted by Brown does not support such an inference. As Judge Barker stated in her opinion denying Brown's motion to suppress:

> As evidence adduced in this cause, the [hundreds of Cordingley] warrants [in evidence] more convincingly prove that Judge Cordingley has extraordinary experience in reviewing warrant applications because of the volume of applications submitted to her, rather than that she routinely issues invalid warrants.

Moreover, Judge Cordingley testified that she did deny applications for warrants during the pertinent period. Finally, the so-called "boiler-plate" affidavits she approved were examined by the district judge and determined not to be such at all. Brown has been unable to convince us to the contrary.

Brown did not show any individually defective Cordingley warrants. Not only did he fail to adduce evidence to establish the number of warrants disapproved, but he also did not demonstrate that the judge's practices had been previously challenged and therefore put the executing police officers on notice. Finally, even if we accept Brown's contention that "most of the affidavits submitted and approved were form affidavits" that followed the format contained in his reply brief, that does not suffice to prove that Judge Cordingley approved an invalid warrant in this case. While it might be difficult for a litigant to establish how the municipal judge abandoned her neutral and detached role in evaluating warrant applications, Brown's evidence was properly found insufficient to preclude the good faith exception to the exclusionary rule.

### III.

Under the strictures of *Leon,* the judgment of the district court denying defendant's motion to suppress the evidence seized pursuant to the second search warrant must be

Affirmed.