**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David Lee BALDWIN, Defendant–
Appellant.**

**No. 92–30027.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1993.

Decided March 10, 1993.

Allen R. Bentley, Bukey & Bentley, Seattle, WA, for defendant-appellant.

Leonie G. Hellwig, Asst. U.S. Atty., Seattle, WA and Thomas M. Gannon, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: FARRIS and KLEINFELD, Circuit Judges, and DAVID ALAN EZRA, District Judge.*

FARRIS, Circuit Judge:

David Lee Baldwin appeals his conviction on one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B) (1988), and two counts of dis-

---

* Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation.

tributing cocaine in furtherance of the conspiracy, in violation of 21 U.S.C. § 841(a)(1)–(b)(1)(C) (1988). He argues that his residence was searched pursuant to an invalid warrant, that the district court improperly instructed the jury on the conspiracy charge, and that his trial counsel was ineffective. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

Eugene Kubera and Ricardo Garza were arrested on July 27, 1990, as they tried to complete a drug deal in a hotel parking lot. Baldwin was arrested later that day in connection with that transaction. His home was then searched, and a triple beam scale, a small mirror, and a small brown vial were seized. These items were admitted at trial, over Baldwin's objection. Baldwin and Garza were tried jointly. Garza was convicted, but the jury hung as to Baldwin. Baldwin was then reindicted and convicted.

## I. SEARCH WARRANT

Baldwin argues that the district court erred by denying his motion to suppress evidence seized during the execution of the search warrant. He contends the warrant was not based on probable cause, and that it failed to describe the items to be searched with sufficient particularity. We reject these contentions.

We review the magistrate judge's determination of probable cause for clear error. *United States v. Bertrand*, 926 F.2d 838, 841 (9th Cir.1991). We examine de novo the warrant's particularity. *United States v. McLaughlin*, 851 F.2d 283, 285 (9th Cir.1988).

### A. *Probable Cause*

For an affidavit in support of a search warrant to establish probable cause, the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued. Based on the nature of the evidence and the type of offense, a magistrate may draw reasonable inferences about where evidence is likely to be kept. We have previously recognized that in the case of drug dealers, evidence is likely to be found where the dealers live.

*United States v. Garza*, 980 F.2d 546 (9th Cir.1992) (internal quotations and citations omitted). Baldwin argues that his role in the transaction was merely peripheral, and that it therefore was unreasonable to issue a warrant to search his home. The warrant affidavit indicated that: (1) Baldwin told the undercover DEA agent that he had been distributing cocaine—at times up to fifty to sixty kilograms per month—for fifteen years, and (2) Kubera informed the agent that Baldwin kept assets at his home that were purchased with drug proceeds. The magistrate judge had sufficient evidence to support an inference that evidence would be found at Baldwin's home. *Cf. United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir.1986) ("When the traffickers consist of a ringleader and assistants, a fair probability exists that drugs will be present at the assistants' residence....").

Baldwin attacks the affidavit piecemeal, arguing that probable cause did not exist to search for some items listed in the warrant, while sufficient particularity was lacking as to the same or other items. This "hypertechnical" approach is inconsistent with the Supreme Court's statement in *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), that probable cause is to be determined on the basis of the "totality-of-the-circumstances."

> "A grudging or negative attitude by reviewing courts toward warrants," is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner."

*Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)); *see also Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984) (reviewing court should consider "affidavit in its entirety," as opposed to dissecting the affi-

davit and judging "bits and pieces of information in isolation").

██ Perhaps recognizing the tenuousness of his position under the totality-of-the-circumstances, Baldwin invokes, for the first time on appeal [1], an innovative argument: that the warrant was fatally flawed by the affiant's failure to specify how he knew that the house listed in the warrant application was Baldwin's residence.

Baldwin's reliance upon *United States v. Brown*, 832 F.2d 991 (7th Cir.1987), *cert. denied*, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 243 (1988), is misplaced. In *Brown*, the Seventh Circuit upheld the search of an apartment based on the officers' good faith reliance on a seemingly valid warrant. *Id.* at 992. The apartment allegedly served as one of several "mail-drops" for the defendant's mail fraud scheme. In the discussion preceding its good faith analysis, the court noted that the warrant affidavit failed to indicate how the police knew the apartment was used by the defendant. *Id.* The court also stated that there was a "paucity of information" suggesting that a search of the apartment would uncover evidence of wrongdoing. *Id.* Together, these two factors sufficed to invalidate the warrant.

A clear link existed between Baldwin's residence, wherever located, and evidence of wrongdoing. Probable cause was established to show that Baldwin was involved in cocaine distribution. The magistrate judge therefore was entitled to infer that evidence would be found at his home. *Garza*, 980 F.2d at 550. No analogous inference is drawn in mail fraud cases. Moreover, the affidavit recited the basis for the affiant's belief that a search of Baldwin's residence would uncover assets purchased with drug money.

The affiant's failure to delineate how he discovered the location of Baldwin's residence does not render clearly erroneous the probable cause determination.

### B. *Particularity and Severance*

██ The Fourth Amendment requires that a search warrant "particularly describe[ ] the place to be searched and the persons or things to be seized." Baldwin argues that certain provisions in the warrant were invalid because they were not sufficiently particular. For example, he argues that the phrase "things of value which may have been acquired through the sale of cocaine" is impermissibly broad. He may be correct. *See United States v. Holzman*, 871 F.2d 1496, 1509 (9th Cir. 1989) (invalidating portion of warrant authorizing search for "any property or devices used or obtained through fraud"); *United States v. LeBron*, 729 F.2d 533, 536 (8th Cir.1984) (invalidating warrant to search for "stolen property"); *cf. United States v. Gomez-Soto*, 723 F.2d 649 (9th Cir.) (search warrant partially invalid where it lacked "objective guidelines to aid the determination of what may or may not be seized"), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984).

██ Under the rule of severance, however, only those items seized pursuant to invalid portions of a warrant must be suppressed. *Gomez-Soto*, 723 F.2d at 624; *see Holzman*, 871 F.2d at 1510. The scale, mirror, and vial are within the warrant's description of "paraphernalia used to weigh, store, and distribute cocaine." That description is not overbroad or "unduly generic." *United States v. Hinds*, 856 F.2d 438, 440–41 (1st Cir.1988). Baldwin concedes, as he must, that these items were described adequately. Their admission was proper. The warrant was supported by probable cause and was not rendered invalid by the particularity requirement.

## II.  JURY INSTRUCTIONS

██ Baldwin contends that the district court erred by failing to instruct the jury that proof of an overt act was necessary to convict him of conspiracy to distribute cocaine.

---

**1.** We may consider legal issues first raised on appeal where the opposing party will suffer no prejudice as a result of the failure to raise it in the trial court. *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990).

"Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo." *United States v. Johnson,* 956 F.2d 197, 199 (9th Cir.1992). Where a defendant fails to object to a faulty instruction, we review only for plain error. *United States v. Boone,* 951 F.2d 1526, 1541 (9th Cir.1991); *United States v. Benny,* 786 F.2d 1410, 1416 (9th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). Where the defendant himself proposes the jury instruction he later challenges on appeal, we deny review under the invited error doctrine. *United States v. Guthrie,* 931 F.2d 564, 567 (9th Cir.1991).

At trial, the *government* excepted to the court's proposed instruction because it omitted the overt act requirement. The district court sought Baldwin's view. Baldwin, through his attorney, indicated that he did not believe an overt act was required. The government withdrew its exception, and the court approved the instruction without the overt act requirement.

Baldwin contends that because he did not actually "propose" the instruction, the invited error doctrine is inapplicable. The scope of the doctrine is not so narrow. *See, e.g., United States v. Montecalvo,* 545 F.2d 684, 685 (9th Cir.1976) (doctrine applicable where error "was induced" by defendant's counsel), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2184, 53 L.Ed.2d 229 (1977); *Guthrie,* 931 F.2d at 567 (error invited where defendant declined court's offer to instruct jury on elements of constructive possession).

## III. INEFFECTIVE ASSISTANCE

Baldwin claims he was denied effective assistance of counsel at trial. He alleges that his trial attorney: (1) conceded guilt at a pretrial conference, (2) used offensive language in the presence of the jury, and (3) failed to request a correct jury instruction on the conspiracy charge.

Claims of ineffective assistance of counsel in federal criminal trials customarily are addressed on collateral attack under 28 U.S.C. § 2255, rather than for the first time on appeal. *United States v.*

*Houtchens,* 926 F.2d 824, 828 (9th Cir. 1991). Where, as here, the record on appeal suffices to permit evaluation of the claim, we may decide the issue. *United States v. Swanson,* 943 F.2d 1070, 1072 (9th Cir.1991); *United States v. Molina,* 934 F.2d 1440, 1446 (9th Cir.1991). To succeed, Baldwin must demonstrate that his counsel's actions were "outside the wide range of professionally competent assistance," and that "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687–90, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984).

### A. The "Concession of Guilt"

On the morning of trial, the district court inquired into the preparedness of Baldwin's attorney for trial. This inquiry was undertaken in response to a letter written by Baldwin, in which he urged the court to replace his appointed counsel, Mr. Leatherman. In response to the court's questioning, and in the presence of the prosecutor but not the jury, Leatherman testified as follows:

> To be frank with the Court, I reached the conclusion, and I think this is what the problem is all about, I reached the conclusion based on my review of Mr. Baldwin's testimony in the trial that he doesn't have a defense. And I told him that. And he doesn't want to hear that from me.
>
> \* \* \* \* \* \*
>
> [I]t was my opinion that [Baldwin's first] trial simply got sidetracked on an issue of whether Mr. Baldwin was, in fact, Mr. Kubera's partner or not. And in my judgment, whether he was a partner or not is irrelevant because the issue is under the conspiracy law was he a coconspirator? And my reading of the transcript persuaded me that by his own testimony on direct examination, not to mention cross, essentially he admitted all of the necessary elements that would constitute that charge.

Excerpt of Record at 48–49.

Baldwin argues that these statements demonstrate a genuine break-

down in the adversarial process. In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided the same day as *Strickland,* the Supreme Court created an exception to the *Strickland* standard for ineffective assistance. Under *Cronic,* ineffective assistance is presumed in egregious cases evidencing an actual breakdown in the adversarial process at trial. *Toomey v. Bunnell,* 898 F.2d 741, 744 n. 2 (9th Cir.), *cert. denied,* 498 U.S. 960, 111 S.Ct. 390, 112 L.Ed.2d 400 (1990).

Leatherman's comments are nowhere near egregious enough as to come within the purview of *Cronic.* Baldwin relies upon *Swanson.* There, defense counsel repeatedly informed *the jury* that the government had met its burden of proof, and that he would "not insult the jurors' intelligence" by arguing the existence of reasonable doubt. 943 F.2d at 1073. Leatherman did not concede Baldwin's guilt to the jury. He merely responded to a judicial inquiry, which itself was provoked by Baldwin's assertions. Neither the fact that Leatherman responded, nor the substance of his response, undermined the adversarial process. *Strickland,* not *Cronic,* controls.

Baldwin has not met the *Strickland* requirements of deficient performance and resultant prejudice. Even assuming Leatherman's performance was deficient, a dubious assumption, Baldwin has not shown that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

B. *Offensive Language*

[redacted] Baldwin argues that Leatherman's use of the words "bullshit" (once) and "hell" (twice) during trial constitutes ineffective assistance. This argument is meritless, if not frivolous.

In his direct testimony, Agent Gassett referred to several inculpatory statements made by Baldwin in Gassett's presence. On cross-examination, Leatherman attempted to minimize the impact of the inculpatory statements by questioning Gassett as follows: "I mean, did that strike you as just—I don't know whether I should use the term here, but I can't think of another one, if the Court please—bullshit?" Reporter's Transcript at 284.

Baldwin has shown neither that the use of this epithet was outside the scope of competent performance, nor that he was prejudiced thereby. Leatherman's use of the word "hell" was even more innocuous. Further, no plausible argument can be made that Leatherman's use of two "hells" and a "bullshit," in combination, rendered his assistance ineffective. The overwhelming evidence of Baldwin's guilt precludes a conclusion that the outcome of the trial would have differed had Leatherman refrained from using these arguably offensive terms.

C. *Failure to Request an Overt Act Instruction*

Baldwin alleges that Leatherman's failure to insist upon an overt act instruction constitutes ineffective assistance. Although the invited error doctrine precluded us from evaluating the claim of instructional error as an independent basis for reversal, we now address it as a predicate to resolving Baldwin's claim of ineffective assistance.

[redacted] In *Garza,* 980 F.2d at 553–54, we considered the appeal of Baldwin's coconspirator, who raised the identical claim of instructional error. *Garza* compels the conclusion that the district court erred. *See id.; United States v. Harrison–Philpot,* 978 F.2d 1520 (9th Cir.1992).

[redacted] The instructional error is, however, subject to harmless error analysis. *See Carella v. California,* 491 U.S. 263, 266, 109 S.Ct. 2419, 2420–21, 105 L.Ed.2d 218 (1989); *Garza,* 980 F.2d at 554; *Harrison–Philpot,* 978 F.2d at 1526. The error is harmless "if no rational jury could have made [its] findings without also finding the omitted or presumed fact to be true." *Martinez v. Borg,* 937 F.2d 422, 425 (9th Cir.1991).

In *Garza,* we found that the instructional error was harmless because the jury's de-

termination of Garza's guilt on another count of his indictment, which charged Garza with distribution of cocaine in furtherance of the conspiracy, was " 'functionally equivalent' to finding the existence of the overt act element on the conspiracy count." 980 F.2d at 554.

 Baldwin distinguishes *Garza* on a theory that Baldwin's criminal liability, unlike Garza's, conceivably could have been based on an "aiding and abetting" theory. He contends that the jury may have found him guilty of the distribution counts without finding that an overt act in furtherance of the Count I conspiracy had occurred. We reject this contention.

To convict Baldwin on Count II, the jury was instructed that it had to find that Kubera distributed cocaine to Agent Gassett, that this distribution was in furtherance of the Count I conspiracy, and that Kubera and Baldwin were members of the same conspiracy at the time of the distribution. Instruction No. 18. A similar instruction was given for Count III. *See* Instruction No. 19. By requiring the jury to find that Baldwin's coconspirator made two actual distributions of cocaine, the district court required the jury to find the existence of two overt acts in furtherance of the conspiracy.

 Baldwin is correct in asserting that the charge of conspiracy requires proof not essential to conviction on the substantive distribution offenses. *See Pereira v. United States*, 347 U.S. 1, 11–12, 74 S.Ct. 358, 364–65, 98 L.Ed. 435 (1954). He is incorrect, however, in concluding that his conviction on the distribution counts, even as an aider and abettor, cannot serve as the functional equivalent of a finding of an overt act in furtherance of the conspiracy. Baldwin's reasoning fails to account for the fact that the element rendering conspiracy an offense "separate and distinct" from aiding and abetting is proof of an agreement, *see id.*, an element that was included in the jury instructions.

No rational jury could have convicted Baldwin of Counts I, II, and III without finding an overt act. The district court's error was harmless beyond a reasonable doubt. Baldwin therefore cannot demonstrate the prejudice required on his claim of ineffective assistance.

### D. *Cumulative Effect*

Finally, Baldwin argues that the cumulative effect of his counsel's "mistakes" warrants reversal. The errors alleged, whether considered individually or cumulatively, do not constitute ineffective assistance.

AFFIRMED.