107 F.3d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jaimi Dean CHARBONEAU, Petitioner-Appellant,
v.
Joe KLAUSER, Idaho State Correctional Institution,
Respondent-Appellee.
 No. 95-35277.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 3, 1997.*
Decided Feb. 07, 1997.
 
 Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jaimi Dean Charboneau appeals the district court's denial of his habeas petition, 28 U.S.C. § 2254, and his request for an evidentiary hearing, in connection with his conviction for first degree murder of his ex-wife, Marilyn. Charboneau contends that the Idaho Supreme Court's factual finding regarding his counsel's reliance on a seance in formulating trial strategy was not fairly supported by the record, as required under 28 U.S.C. § 2254(d)(8); that both his pretrial counsel, Bennett, and his trial counsel, Stoker, were ineffective; and that the trial court improperly admitted "similar fact" evidence pertaining to kidnapping and grand theft charges that were dismissed.
 
 
 3
 The district court had jurisdiction under 28 U.S.C. § 2254; we have jurisdiction, 28 U.S.C. §§ 1291, 2253, and affirm.
 
 
 4
 * Charboneau contends that the district court abused its discretion in denying his request for an evidentiary hearing on the issue of whether his pretrial counsel relied on information from a clairvoyant in formulating defense strategy. We disagree.
 
 
 5
 Charboneau is entitled to an evidentiary hearing only if he alleges facts which, if proven, would entitle him to relief, and if he did not receive a full and fair hearing in a state court. See Turner v. Marshall, 63 F.3d 807, 815 (9th Cir.1995). Charboneau presented his claim regarding counsel's reliance on a clairvoyant in a postconviction proceeding before the trial court, as well as before the Idaho Supreme Court. He does not contend that he now has new evidence, or that he was somehow prevented from presenting relevant evidence in his state court proceedings on this very issue. As the district court indicated in denying Charboneau's motion for an evidentiary hearing, the relevant facts and circumstances are clearly set forth in the record and no additional factual determinations need be made in order to analyze Charboneau's habeas claim of ineffective assistance. Under these circumstances, we cannot say the district court abused its discretion in denying the hearing.
 
 
 6
 In essence, Charboneau's argument on appeal is not that he was denied a full and fair hearing in state court, but, rather, that two state courts, and now the federal district court on habeas review, came to the wrong conclusion based on the evidence before them. On habeas review, the factual determinations of a state court are presumed correct, unless the petitioner can rebut that presumption through one of the exceptions listed in 28 U.S.C. § 2254(d)(1)-(8). Charboneau claims that the Idaho Supreme Court's conclusion that counsel did not base his strategy directly on the clairvoyant's information was not fairly supported by the record and is therefore not entitled to a presumption of correctness on habeas review. See 28 U.S.C. § 2254(d)(8). The district court disagreed, concluding, like the Idaho Supreme Court, that the seance did not directly influence defense strategy. We review factual rulings by the district court for clear error. Bonin v. Calderon, 59 F.3d 815, 823 (9th Cir.1995), cert. denied, 116 S.Ct. 718 (1996). We find none here.
 
 
 7
 While the record did contain evidence that counsel had obtained information relating to Charboneau's case from a clairvoyant and had discussed the clairvoyant with others, counsel himself testified that the clairvoyant had "[a]bsolutely no position whatsoever" in the formulation of defense strategy. Furthermore, as the Idaho Supreme Court observed, Charboneau told Bennett his revised version of events, in which Marilyn's daughter fired the fatal shot from a second gun, prior to Bennett's conversation with the clairvoyant. Under these circumstances, we cannot say that the Idaho Supreme Court's factual ruling on this issue is not entitled to a presumption of correctness. Nor can we say that the district court clearly erred in concluding that the clairvoyant exercised no direct influence on Bennett's defense strategy.
 
 II
 
 8
 Charboneau argues that his pretrial counsel, Bennett, was ineffective in basing his defense strategy on a seance; failing to conduct adequate pretrial discovery; permitting uncounseled interrogation of Charboneau by the attorney general's investigator; and permitting Charboneau to testify at the motion to dismiss. Furthermore, Charboneau contends that Bennett's conduct, viewed cumulatively, was ineffective, and that it also indicated a breakdown in the adversarial process, entitling Charboneau to a presumtion of prejudice. As for his replacement trial counsel, Stoker, Charboneau argues ineffectiveness based on Stoker's failure to request a continuance, both to conduct investigation and to order a psychiatric examination.[1]
 
 
 9
 "[I]n order to demonstrate ineffective assistance of counsel, a habeas petitioner must show that counsel's performance fell below that of a reasonable attorney, and that counsel's errors created a reasonable probability that, but for the errors, the outcome of the proceeding would have been different." Hamilton v. Vasquez, 17 F.3d 1149, 1155 (9th Cir.) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984)), cert. denied, 114 S.Ct. 2706 (1994). We review Charboneau's claim of ineffective assistance of counsel de novo. Bonin, 59 F.3d at 825.
 
 
 10
 * As we have concluded, while Bennett received, and seems to have considered, the clairvoyant's information, he did not base his defense strategy on that information.
 
 B
 
 11
 Permitting Charboneau to be interviewed without counsel present and encouraging him to testify at the hearing on the motion to dismiss were part of Bennett's strategy of full disclosure, which was driven by the two-gun theory: Tiffnie, not Charboneau, fired the fatal shot. Bennett believed that, given the opportunity, Charboneau could convince the State that his version of events leading up to Marilyn's murder was correct, and also that there was no basis for the kidnapping and grand theft charges.
 
 
 12
 As the Idaho Supreme court noted, Charboneau told the trial court that "it had been his desire to testify at the hearing on the motion to dismiss, that the decision to do so was a joint decision between him and the defense attorney, and that he agreed that was the best thing to do." State v. Charboneau, 774 P.2d 299, 305 (Idaho), cert. denied, 493 U.S. 922 (1989). The trial judge repeatedly warned Charboneau of his right to remain silent, and Charboneau insisted on testifying. Id. at 312.
 
 
 13
 Also, Bennett explained in his deposition that he permitted Charboneau to be interviewed, alone, by the special prosecutor's investigator because he viewed it as akin to a polygraph examination where no counsel is permitted to be present, and Bennett was hoping to replicate, through the interview, the results that would have been obtained through an actual polygraph, which Charboneau could not afford. The investigator testified at the first postconviction proceeding that he warned Charboneau of his right to remain silent, and that Charboneau agreed to submit to the interrogation. Charboneau, 774 P.2d at 309.
 
 
 14
 In assessing whether counsel's strategy constituted deficient conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Charboneau "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Morris v. State, 966 F.2d 448, 456 (9th Cir.1991), cert. denied, 113 S.Ct. 96 (1992) (emphasis added) (citations omitted). He cannot clear this hurdle. Both Bennett and Charboneau agreed that having Charboneau testify at the motion to dismiss was the best thing to do at the time from a strategic perspective. We cannot say that Bennett's tactical choices clearly exceeded a wide range of reasonable professional assistance and constituted deficient performance.
 
 C
 
 15
 Charboneau contends that Bennett was ineffective because he failed to conduct a reasonable investigation into the events leading up to Marilyn's shooting, and that lack of investigation hindered Stoker's ability to put forth the proper defense strategy, focusing on motive and intent. Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. We assess Bennett's alleged lack of investigation considering "all the circumstances, applying a heavy measure of deference to counsel's judgments." Bonin, 59 F.3d at 833 (quoting Strickland, 466 U.S. at 690-91).
 
 
 16
 Here, Bennett believed that the best way to defend Charboneau was through a strategy of full disclosure and cooperation with the prosecution--a strategy with which Charboneau agreed, freely testifying at the hearing on the motion to dismiss and submitting to interrogation by the investigator. We will not second-guess, as Charboneau asks us to do, that limited defense resources instead should have been channeled into an investigation of the Nevada Trip. See id. (noting that this court "will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight") (citation omitted).
 
 
 17
 Furthermore, Charboneau fired Bennett before trial began, and the court appointed new counsel, Randy Stoker. Stoker might have pursued a different strategy had he been Charboneau's lawyer from the outset, but that does not compel us to conclude that Charboneau was prejudiced, as required under Strickland, by Bennett 's alleged failure to conduct pretrial investigation in accordance with what would have been Stroker 's preferred trial strategy.
 
 D
 
 18
 Nor can we say that Stoker was ineffective in failing to request a continuance to conduct additional discovery or to arrange a psychiatric examination of Charboneau. Charboneau himself precluded the possibility of additional meaningful investigation when he informed the court, upon Stoker's appointment, that he still wanted his trial to proceed as scheduled. Charboneau, 774 P.2d at 305. Furthermore, no evidence indicates that Charboneau was prejudiced because he was not given a psychiatric evaluation before trial: The jury was instructed on lesser included offenses and, as the Idaho Supreme Court noted, the psychiatrist who evaluated Charboneau after his conviction and in conjunction with sentencing offered no opinion that could excuse the killing. Id. at 310.
 
 E
 
 19
 Charboneau also contends that "the errors of defense counsel in this case were so egregious that there was a breakdown in the adversarial process" and that ineffective assistance should be presumed under United States v. Cronic, 466 U.S. 648 (1984), and United States v. Baldwin, 987 F.2d 1432 (9th Cir.), cert. denied, 508 U.S. 967 (1993). We disagree.
 
 
 20
 Although Bennett pursued a strategy of full disclosure and cooperation with the State, he did not abdicate his role as Charboneau's advocate: his cooperation was motivated by his view that he could persuade the State that Charboneau's version of events was right and could not sustain the charges. Under these circumstances, Strickland, not Cronic, controls our inquiry. Cf. Baldwin, 987 F.2d at 1438 (concluding that counsel's statements to trial judge that the defendant "doesn't have a defense" and "essentially he admitted all of the necessary elements that would constitute that charge" did not undermine the adversarial process, and therefore Strickland, not Cronic, governed). Nor can we agree that Bennett's errors, viewed cumulatively, enhance their egregiousness such that they constitute ineffective assistance.
 
 III
 
 21
 Charboneau contends that the trial court's admission of "similar fact" evidence, despite the dismissal of the grand theft and kidnapping charges, warrants habeas relief. "Claims of inadmissibility of evidence are cognizable in habeas corpus proceedings only when admission of the evidence violated the defendant's due process rights by rendering the proceedings fundamentally unfair." Vasquez, 17 F.3d at 1159. We conclude that the admission of "similar fact" evidence did not render Charboneau's trial fundamentally unfair.
 
 
 22
 The trial judge did not strike the evidence, stating that it would have been admissible anyway under Idaho Rule of Evidence 404(b), which permits introduction of evidence of "other crimes, wrongs, or acts" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Charboneau, 774 P.2d at 313-14. The Idaho Supreme Court affirmed this evidentiary ruling, noting that "the circumstances of these acts indicated the hostility of Jaimi to Marilyn." Id. at 314. This court has "no authority to review a state's application of its own laws." Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir.1990).[2] Nor do we conclude that the introduction of this evidence rose to the level of a constitutional due process violation.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Charboneau has not appealed the district court's denial of two additional grounds for Bennett's ineffective assistance: his divulgence of defense theories to the prosecution and his consolidation of all charges. These actions were part of Bennett's overall strategy of full-disclosure which, as we conclude, was not unreasonable under the circumstances. Nor does Charboneau raise, on appeal, Stoker's failure to object to comments made by the prosecutor about the burning of Marilyn's car
 
 
 [2]
 Charboneau asks us to analyze the admission of this evidence under the Idaho Evidence Code pursuant to the test this court applies to prior acts admitted under Federal Rule of Evidence 404(b). See United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1990). Instead, as we have noted, the correct standard on habeas review is whether the admission of the evidence violated Charboneau's due process rights by rendering the proceedings fundamentally unfair. Vasquez, 17 F.3d at 1159