R<span style="font-variant:small-caps">EVERSED AND</span> R<span style="font-variant:small-caps">EMANDED.</span>

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph E. HORNICK,**
**Defendant-Appellant.**

No. 86–2839.

United States Court of Appeals,
Seventh Circuit.

Argued March 30, 1987.

Decided April 14, 1987.

Stephen J. Eisenberg, Eisenberg Law Office, S.C., Madison, Wis., for defendant-appellant.

John W. Vaudreuil, John R. Byrnes, U.S. Atty., U.S. Attorney's Office, Madison, Wis., for plaintiff-appellee.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Caught at the airport with more than 250 grams of cocaine in his boots, Joseph Hornick entered a conditional guilty plea to a charge of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to five years' imprisonment, to be followed by three years' special parole. The "condition" on the plea was that Hornick be allowed to appeal the denial of his motion to suppress the cocaine. Magistrate James Groh recommended that the district judge deny the motion; she did. The magistrate's report is a thoughtful and thorough treatment of Hornick's claims. We add weight to the Federal Reporter only to clarify this court's position on a few matters.

1. Hornick was arrested and searched on the authority of a warrant

issued by a Wisconsin judge to Wisconsin officials. A federal agent accompanied the state officials as they executed the warrant and may have participated in some of the questioning. Hornick says that this invalidated the search because federal participation requires a federal warrant, and this warrant did not comply with Fed.R.Crim.P. 41: it was authorized by and returned to a state rather than federal judge, it was to be executed "forthwith" instead of within the 10 days normally allowed by a Rule 41 warrant, and so on. None of these matters deals with the validity of the warrant under the fourth amendment. It should be clear after *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), that technical defects in a warrant do not call for or permit exclusion of what the search produces. Judge Friendly's thorough opinion in *United States v. Burke*, 517 F.2d 377 (2d Cir.1975), discusses the extent to which suppression of evidence is the proper response to violations of Rule 41. Our own cases, roughly contemporaneous with *Burke*, say that foibles in the administration of Rule 41 are not grounds for exclusion. *United States v. Jones*, 518 F.2d 384, 387–88 (7th Cir.1975); *United States v. Harrington*, 504 F.2d 130 (7th Cir.1974). In light of *Leon*, it is difficult to anticipate any violation of Rule 41, short of a defect that also offends the Warrant Clause of the fourth amendment, that would call for suppression. Many remedies may be appropriate for deliberate violations of the rules, but freedom for the offender is not among them.

2. The application for the warrant was supported by a lengthy affidavit from an officer of the Madison, Wisconsin, police. The star of this application was "MPD 840", who knew that Hornick and a companion were headed to Florida to pick up cocaine. According to the application, MPD 840 had supplied reliable information on more than 20 occasions in the past, had observed Hornick in possession of large quantities of cocaine, and had learned about the next trip. The officers verified

part of this tip by watching Hornick and companion leave, as predicted, for Florida. The ticket clerk told them that Hornick and his companion had paid cash for two round-trip tickets; Hornick's was issued in someone else's name. The police had a warrant waiting when he returned. (His companion, John T. Meyers, had 347 grams of cocaine in his boots when arrested; Meyers pleaded guilty unconditionally.)

The tip from MPD 840 was sufficient to establish probable cause under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As in *Gates*, the informant's report was corroborated in part by the officers. Hornick responds that "MPD 840" is fictitious. In the district court Hornick filed the affidavit of Scott DiFiore, a friend, denying that he was MPD 840; in this court Hornick's brief asserts: "Upon information and belief, the confidential informant was either Scott DiFiore or does not exist." That assertion is unsupported by a reference to the record. Counsel for Hornick points out that a defendant is in a pickle because he cannot obtain an affidavit from everyone in Wisconsin denying tipping off the police; he concludes that when the defendant denies the existence of an informant, he should be entitled to see the files indicating the informant's existence or to have a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

■■■ This is altogether too easy. The confidentiality of many informants must be maintained to protect their safety. The drug business contains some nasty, vindictive people. A bald denial of the existence of an informant does not call for a hearing; *Franks* held that the defendant bears a substantial burden to demonstrate probable falsity. 438 U.S. at 171–72, 98 S.Ct. at 2684. The affidavit of a friend, coupled with counsel's say-so, does not satisfy that burden.

We appreciate the difficulty of defendants in Hornick's position. Perhaps a dem-

onstration that only four people were privy to his dealings, coupled with affidavits from each, would require the prosecutor to demonstrate to the judge *in camera* that the informant was some other (real) person; deficiencies in this demonstration might call for an evidentiary hearing. We need not speculate how close Hornick came to making the necessary showing, however, because his lawyer filed an affidavit before the magistrate conceding that MPD 840 was real and went by the name Joe Simons. Magistrate Groh accepted that concession and made it the basis of his recommendation. Before the district judge, counsel tried to take back the affidavit, which Judge Crabb declined to allow. On appeal, the same lawyer proceeds as if none of this had happened, as if we were making a de novo determination; no mention of Joe Simons appears in his briefs. Having ignored the ground on which he lost in the district court, counsel cannot start from scratch on appeal. Arguments not raised in the briefs are waived, *In re Bear*, 789 F.2d 577 (7th Cir.1986), and Hornick has waived what had to be a central argument in his case.

3. Hornick visited Tellurian Community, Inc., a drug treatment center. During an interview, Hornick regaled the counselor with tales of his exploits in the drug trade. The presentence report contained a summary of Hornick's statements. Hornick did not deny making them; he excused them as boasts to impress the counselor. (They impressed her, all right, but not with the effect Hornick had hoped for.) The probation office obtained notes of the interview on the strength of Hornick's written waiver of confidentiality, which Hornick insists he revoked in time. His lawyer asked the judge to delete the summary from the presentence report on the ground that the replies are privileged under 42 U.S.C. § 290ee–3(a). The privilege is not absolute, however; it may be waived or overcome by a court order under § 290ee–3(b)(2)(C). Cf. *Pennsylvania v. Ritchie*, — U.S. —, 107 S.Ct. 989, 1001–04, 94 L.Ed.2d 40

(1987). The district judge declined to strike the summary of the interview, stating: "[I]t's part of this report, and I am considering it. If you want to do something about the matter [sic: manner?] in which it was turned over to us, that's something that you can consider doing. I don't see any reason not to rely upon it in this instance." Hornick maintains that this decision violates Fed.R.Crim.P. 32(c)(3)(D).

▮ Rule 32, however, deals with portions of the report claimed to be inaccurate. Hornick does not say that the summary is inaccurate; it is all too accurate a recap of what Hornick said. Nothing in Rule 32 deals with evidentiary privileges. Rule 32 is designed to increase the portion of truth in sentencing; privileges are designed to hide certain truths. We could not make Rule 32 a guardian of evidentiary privileges without inverting its meaning.

The authority to invoke a privilege in a sentencing hearing is instead Fed.R.Evid. 501, which in light of Fed.R.Evid. 1101(c) and (d)(3) applies to sentencing. The antagonist to Rule 501 is 18 U.S.C. § 3661 (until recently § 3577), which states: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Rule 501, which is more recent and was enacted as a statute, may modify § 3661 by implication, although § 3661 was recodified in 1984, after Rule 501. (The portion of the Rules Enabling Act applicable to evidence, 28 U.S.C. § 2076, does not contain the express repealer clause that governs the rules of civil procedure, 28 U.S.C. § 2072.) On the other hand, § 3661 may continue to apply when the privilege is qualified, as the privilege in § 290ee–3 is. The principal defect in the use of the summary of the interview is the absence of the disclosure order permitted by § 290ee–3(b)(2)(C), not the fact that such information is off limits

under all circumstances. Perhaps § 3661 permits the use of information obtained in procedurally irregular ways. It has been accorded broad scope by the Supreme Court, e.g., *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980); *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978); *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), and appellate courts have received the widest range of information—including information seized in violation of the Constitution. See *United States v. Butler*, 680 F.2d 1055 (5th Cir. 1982); *United States v. Schipani*, 435 F.2d 26 (2d Cir.1970). See also *Lawary v. United States*, 599 F.2d 218, 225–27 (7th Cir. 1979).

Our consideration of this problem has been handicapped by the fact that neither the district judge nor the parties referred to the right statutes—Rule 501 and § 3661. Everyone focused on the effects of Rule 32. We can answer in a word ("no") the question whether the summary of the interview had to be excluded under Rule 32. We cannot readily answer the question whether the court-order proviso of § 290ee–3(b)(2)(C), in conjunction with § 3661, permits the use of such information in a sentencing proceeding even though the court has not issued the necessary order. We cannot tell whether Hornick's written waiver was sufficient despite its purported revocation; the parties have not addressed this issue on appeal. It is prudent to leave such questions unresolved until a case in which the parties focus on what matters. The district court did not err in answering the only question presented to it (under Rule 32), and the admission of the evidence under § 3661, § 290ee–3, and Rule 501 is not the sort of "plain error" that requires attention in the absence of a focused argument by counsel.

4. The district judge declined to give Hornick credit against his sentence for time spent in a halfway house pending trial. The judge viewed the arrangement as noncustodial. Hornick wants us to reverse this determination. So far as we can tell, however, the judge's statement was nothing but an advisory opinion. Under 18 U.S.C. § 3568 the Attorney General, not the sentencing court, awards credit for custody prior to the commencement of the sentence. See *United States v. Norman*, 767 F.2d 455, 457 (8th Cir.1985); *United States v. Baez*, 732 F.2d 780, 782 (10th Cir.1984); *Chua Han Mow v. United States*, 730 F.2d 1308, 1313 (9th Cir.1984). If the Attorney General's decision is illegal or unconstitutional, it may be reviewed under 28 U.S.C. § 2241 in the district where the prisoner is confined. Hornick entered prison in 1986. We do not know whether the Attorney General has given Hornick the credit he seeks. We are confident, however, that it is premature to decide. The Attorney General should be free to exercise his own judgment on the matter, free of any perception that the district court has rendered an authoritative decision.

We have considered Hornick's other arguments, which are not substantial. To the extent the district judge purported to deny Hornick credit for time served in the halfway house, the judgment is vacated; in all other respects the judgment is affirmed.