**UNITED STATES of America, Plaintiff,**

v.

**Philip FAIRCHILD, Defendant.**

**No. 89–CR–111–C.**

United States District Court, W.D. Wisconsin.

May 8, 1990.

Jeffrey Anderson, Asst. U.S. Atty., Madison, Wis., for plaintiff.

Stephen J. Eisenberg, Madison, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

So as to preserve his rights to appeal, defendant has filed objections to the report and recommendation entered herein by the United States Magistrate on April 13, 1990. He contends the magistrate erred in finding that the affidavit in support of the application to search an apartment in San Antonio was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; that the magistrate erred in finding that probable cause existed for the issuance of a warrant for the search of a motorhome; and finally, that the magistrate erred in finding that defendant had no standing to contest the legality of a search of a mini warehouse, and that even if he did have such standing, there was sufficient probable cause to justify the search.

After reviewing the magistrate's report, defendant's objections, and the briefs of both parties, I conclude that the findings of fact and conclusions of law proposed by the magistrate in his report and recommendation should be adopted as the court's own and that his recommendation should be followed.

There is no merit to defendant's challenge to the magistrate's proposed finding that it was unreasonable for the executing officer to rely on the validity of the warrant for the search of the San Antonio apartment. As the magistrate noted, there was a nexus between the premises and the contraband that went beyond a mere " 'tenuous and conclusory suggestion.' " Report and Recommendation at p. 20 (quoting *United States v. Granger*, 596 F.Supp. 665, 671 (W.D.Wis.1984)). It rested on a sworn statement that defendant had been seen at the apartment within the preceding 36 hours.

I conclude also that there is no merit to defendant's objection to the magistrate's proposed finding and conclusion that sufficient probable cause existed for the issuance of the warrant to search the Coachmen motor home.

Defendant's challenge to the validity of the warrant to search the Lyden Mini Warehouse is based on his contention that the magistrate intends to recommend the suppression of evidence obtained during the search of another warehouse. In light of defendant's representation, I have reviewed the affidavit in support of the application to search the Lyden warehouse. Even if all of the information obtained as a result of the search and seizure of Mueller's Nursery and Fur Shed Mini–Warehouse were excluded, the affidavit would still be sufficient to support the issuance of the search warrant.

Moreover, I concur with the magistrate that defendant lacks standing to contest the legality of the search because he has failed to establish that any personal Fourth Amendment right was implicated in the search. Defendant contends that it was not his burden to establish standing, that he was entitled to rely on the government's failure to object to the averments of his affidavit in that regard. He is wrong in that respect, but the issue is of minimal importance, given the sufficiency of the affidavit he seeks to challenge.

## ORDER

IT IS ORDERED that the findings of fact and conclusions of law proposed by the magistrate in his April 13, 1990 Report and Recommendation are adopted as the court's own; defendant's motion to suppress evidence obtained during the search of the San Antonio apartment is DENIED; the motion to suppress evidence obtained in the search of the automobile is GRANTED; and defendant's motions to suppress evidence obtained during the search of the Coachmen motor home and the Lyden Mini Warehouse are DENIED.

## REPORT AND RECOMMENDATION

JAMES GROH, United States Magistrate Judge.

In a superseding indictment returned on October 4, 1989, defendant is charged with

one count of conspiring to manufacture or distribute methamphetamine from May 15, 1987 to May 31, 1989, in violation of 21 U.S.C. §§ 846, 841(a)(1), and two counts of possessing phenylacetone with intent to manufacture another controlled substance in violation of 21 U.S.C. § 841(a)(1). (Dkt. # 2)

Defendant moves to suppress evidence seized pursuant to three search warrants on the ground, among others, that the warrants were issued without bases in probable cause. The warrants are: (1) a Texas state court warrant to search an apartment at 3935 Thousand Oaks, Apt. 901, San Antonio, Texas, and an automobile in the parking lot there (Dkt. # 70); (2) a Texas state court warrant to search a Coachman motorhome located in Kingsland, Texas (Dkt. # 59); and a Wisconsin state court warrant to search a mini-warehouse located in the Township of Union Wisconsin (Dkt. # 75). This Report and Recommendation, submitted pursuant to 28 U.S.C. § 636(b)(1)(B), recommends that the first motion (Dkt. # 70) be granted in part and denied in part and that the other two motions be denied.

## FINDINGS OF FACT

For the purpose of this motion, I find the following facts:

### 1. *The Thousand Oaks Warrant*

On October 27, 1988, the Hon. David Berchelmann, Judge [1] for the 290th Texas District Court at San Antonio, Bexar County, Texas, issued a warrant to search Apt. 901, 3935 Thousand Oaks, San Antonio, and a black 1984 Chevrolet Corvette, Texas license number 355LMH in the parking lot located there.[2] The warrant authorized a search for methamphetamine, a controlled substance, and commanded the arrest of

those parties controlling the premises or found in the possession of controlled substances. The warrant was executed that afternoon at 3:45 p.m. and the search yielded several items including a number of plastic baggies of a substance believed to be methamphetamine. (See police reports attached to Def. Br., Dkt. # 71) [3]

The warrant was based on the affidavit of Detective Jack Wright of the San Antonio Police Department sworn at 11:15 a.m., October 27, 1988. The complete factual allegations of the affidavit are as follows:

That [Det. Wright] has good reason to believe and does believe that a certain place in Bexar County, Texas described as The Dublin Square Apartments known as and numbered as 3935 Thousand Oaks and the apartment to be searched being known as and numbered as apartment number 901, and a 1984 Chevrolet Corvette, black in color, Texas license number 355LMH found in the parking lot of the above described premises

In the city of San Antonio, Bexar County, Texas, and being the premises under the control and in charge of John Beach, Philip Fairchild, and Trina Bowers is a place where a controlled substance, to wit: METHAMPHETAMINE is unlawfully possessed in violation of the TEXAS CONTROLLED SUBSTANCE ACT and that such belief of the affiant is founded upon the following information: Affiant did on the 27th day of October 1988 receive information from a credible and reliable person who has on previous occasions given affiant information regarding the trafficking in controlled substances that has proven to be true and correct, but whose identity cannot be revealed for security reasons, that the above said credible and reliable per-

---

1. Defendant, by his attorney's letter of December 26, 1989, represents that Judge Berchelmann was a judge and not a state court magistrate as indicated on the face of the warrant. (Dkt. # 85) He has therefore withdrawn his original assertion that the warrant was issued in violation of F.R.Crim.P. 41.

2. Copies of the warrant, the supporting affidavit and police reports of the execution are attached to defendant's brief (Dkt. # 71).

3. The police reports by Det. Wright submitted in support of this motion do not indicate which items were taken from the apartment and which from the car but another report by Det. Wright, submitted by defendant in support of a companion motion, indicates that the methamphetamine was all found in the apartment. (Eisenberg Aff., Ex. B, Dkt. # 60)

son did within the past thirty-six hours see a controlled substance, to wit: methamphetamine unlawfully possessed by the aforesaid Philip Fairchild at the above described premises. . . .

### 2. *The Motorhome Warrant*

On the following day, October 28, 1988,[4] Justice Robert W. Hall of Burnet County, Texas, issued a similar warrant to search

a Coachman motorhome, Tan in color with brown and orange striping, bearing Wisconsin license plates: D 25852 MAR '89 and Certified Motor Home issue/serial no. 319536, and said motorhome is attached to Lot # 6 at Kingsland Lodge Ranch Rd. 1431, P.O. Box 483 Kingsland, Tx. 78639.[5]

The warrant was executed at 8:30 P.M., October 28, 1988, and the search yielded two pounds, fourteen ounces of methamphetamine.

The warrant was based on the affidavit of one Holly M. Cheatham.[6] The affidavit identified the motorhome as defendant's and averred that it was being used for the unlawful possession and sale of controlled substances. Cheatham then described the basis for that conclusion:

Affiant is a task force investigator with the San Antonio, Tx. D.E.A. Office and has been investigating John P. Fairchild[7] in unison with the San Antonio Police Dept. and D.E.A. During undercover negotiations your affiant learned that John P. Fairchild is a distributor of Methamphetamine in the San Antonio, Tx. and the state of Wisconsin areas. Upon this information a search warrant was executed in San Antonio, Tx. and approx.

one-and-one half Lbs. of methamphetamine[8] was seized from John P. Fairchild. Fairchild was subsequently arrested.[9] Upon information received from a credible and reliable source, this affiant received further information that John P. Fairchild owned a motorhome which was located in Kingsland, Tx. at the Kingsland Lodge attached to lot # 6. This credible and reliable source described to your affiant the motor home as being tan in color bearing Wisconsin license plates. The credible and reliable source also stated that within the past 36 hours he/she had seen a large quantity approx. 4–5 ounces of methamphetamine in John P. Fairchild's aforementioned motor home. The credible and reliable source further informed your affiant that that [sic] John P. Fairchild's aforementioned motor home was located in Burnet Co., Texas the city of Kingsland in the Kingsland Lodge off Ranch Rd. 1431.

### 3. *Mini–Warehouse Warrant*

On May 31, 1989, a warrant was issued by the Hon. Thomas H. Barland, Eau Claire County, Wisconsin, Circuit Court Judge, to search

a 10 × 10′ tan steel framed mini-warehouse, building C, door #19, Lyden Mini–Warehouses located at 4220 Cardell Road in the Township of Union, County of Eau Claire, Wisconsin,

for methamphetamines and other controlled substances and other chemicals and paraphernalia related to the use, distribution and manufacture of controlled sub-

---

4. The warrant and incorporated affidavit are dated 1989. I have taken this to be a clerical error. The parties agree that the warrant was issued in 1988. The return was made October 28, 1988.

5. Defendant has submitted a copy of the warrant, affidavit and return with his attorney's affidavit. (Dkt. # 60)

6. The affidavit was sworn at 7:40 p.m., October 28, 1988.

7. Defendant concedes that the affidavit identifies him. (Def. Aff., Dkt. # 89)

8. Under the drug equivalency tables of the United States Sentencing Commission, *Guidelines Manual,* § 2D1.1 at 2.48 (Nov. 1989), 1 gram of methamphetamine is the equivalent of 5 grams of cocaine or 1 gram of heroin.

9. This refers to the execution of the Thousand Oaks warrant in San Antonio the previous day. Defendant was arrested at 6:30 p.m., October 27, upon his return to the Thousand Oaks address. (Def. Aff., Dkt. # 89; Eisenberg Aff. ¶ 3, Dkt. # 60)

stances.[10]

The warrant was based on the affidavit of Special Agent John Staber of the Wisconsin Division of Criminal Investigation (DCI).[11] Through DCI Special Agent John Rehrauer, Agent Staber learned of the investigation by Dets. Wright and Martinez of the San Antonio Police Department of defendant's drug dealing activities in Texas, and his arrest in October, 1988, following the discovery of 1.5 pounds of methamphetamine during the search of his San Antonio apartment. The discovery of an additional 2.5 pounds of methamphetamine during the search of the motorhome is also reported. Defendant was released on bail on November 3, 1988.

Agent Staber also learned from Det. Wright of an informant's advice that defendant was residing in a home in rural Fairchild, Wisconsin and had rented a mini-warehouse where he stored chemicals for a methamphetamine lab. On May 5, 1989, such a storehouse was discovered in response to a reported break-in at a mini-warehouse at Mueller's Nursery and Fur Shed in Chippewa Falls, Wisconsin. The officer smelled chemicals and called the fire department and the Department of Natural Resources. Further investigation revealed paraphernalia and chemicals associated with the manufacture of methamphetamine, and that the unit was likely to have been rented by a Philip J. Bowers whose listed mailing address was a postal box rented to defendant.[12] The phone number on the lease was listed to Gregory K. Bowers and Trina Bowers of Fairchild, Wisconsin.

From Det. Wright, Staber also learned that Gregory Bowers was defendant's brother-in-law and assisted him by selling the methamphetamine defendant produced, in the Minneapolis, San Antonio and Houston areas for $16,000 a pound. He also learned that defendant ran a chemical company in Houston and had taken enough chemicals to Wisconsin to produce methamphetamine for 5 years. Wright advised that defendant's *modus operandi* was to store the chemicals in mini-warehouses and that Bowers home had once been the site of the lab.

Records of the Eau Claire Electric Cooperative revealed that the Bowers residence in Fairchild, Wisconsin experienced a three-fold increase in monthly power consumption beginning in November, 1987, when the Bowers moved in. The manufacture of methamphetamine requires a great deal of electric power. No other outward activity was observed to explain the increase in usage of electricity. When he moved into the residence, Bowers told a citizen witness that he needed a barn with extremely good wiring and two exits.

The citizen informant had also reported suspicious activities at the Bowers residence. These included: large volumes of traffic in the early summer of 1988, including a semi-truck with Texas license plates hauling heavy equipment; an alternating pattern of late-night activity at two-week intervals, accompanied by the departure of the Fairchilds; and signs of wealth beyond the apparent means of the residents, including at least two Corvettes, motorhomes and a satellite dish.

In November, 1988, Gregory Bowers rented a storage unit with 24-hour access from Lyden Mini-Warehouses at 4220 Cardell Road, in Eau Claire County, Wisconsin. The rent on the unit was paid, in cash, through April, 1989.

## CONCLUSIONS OF LAW

Defendant contends as to each warrant that the supporting affidavits are deficient and therefore fail to allege sufficient facts

---

**10.** The warrant and supporting affidavit are attached to defendant's brief. (Dkt. # 76) No evidence is presented as to the execution and fruits of the search. Defendant represents that he has not been provided with a copy of the return. (Dkt. # 75)

**11.** Because I have concluded that defendant has no privacy interest in the mini-warehouse, I have abbreviated substantially the summary of Agent Staber's 5½–page, single-spaced, affidavit.

**12.** This warrantless search is itself the subject of a motion to suppress and will be considered in a separate Report and Recommendation. (Dkt. # 80)

to support findings of probable cause. The test for probable cause to issue a search warrant was stated by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

The question presented on review of an issuing judicial officer's determination is not whether the reviewing court would have issued the warrant based on the affidavit as presented, but whether the court which did issue the warrant had a " 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–239, 103 S.Ct. at 2332–33 (citation omitted). As explained by the Supreme Court:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." [*Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590–91, 21 L.Ed.2d 637 (1969)]. "A grudging or negative attitude toward warrants," [*United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common-

sense, manner." *Id.*, at 109, 85 S.Ct. at 746.

*Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. See also *United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir.1984).

### A. *The Thousand Oaks Warrant*

The probable cause showing for this warrant is based solely on the report of a confidential informant depicting his or her observation of an unspecified quantity of methamphetamine in defendant's possession at the apartment within a period of 36 hours preceding the application. Defendant raises two issues in his challenge to the sufficiency of the affidavit: (1) that there was no adequate basis on which the judge could evaluate the credibility of the confidential informant, and (2) that because the informant's information was 36 hours old there was no basis for believing that methamphetamine would still be found in the places to be searched.

### 1. *Informant Credibility*

■ Defendant's contention is premised on Fourth Amendment doctrine that was criticized as "encourag[ing] an excessively technical dissection of informant's tips [footnote omitted]" and "impeding the task of the law enforcement" and was emphatically rejected in favor of "the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations." *Gates*, 462 U.S. at 234, 237 and 238, 103 S.Ct. at 2331–32.[13] This does not mean that an informant's veracity or the source of his or her knowledge need not be considered.

> Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall

---

13. Under the former two-pronged test, an affirmative showing of the basis of an informant's knowledge and his or her veracity was required as independent elements in the probable cause equation. The court in *Gates* explained the formula:

> According to this view, the [informant's anonymous] letter, as supplemented by [the officer's] affidavit, first had to adequately reveal

the "basis of knowledge" of the letterwriter—the particular means by which he came by the information given in his report. Second, it had to provide facts sufficiently establishing either the "veracity" of the affiant's informant, or, alternatively, the "reliability" of the informant's report in this particular case.

*Gates*, 462 U.S. at 228–228, 103 S.Ct. at 2327.

reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

*Gates,* 462 U.S. at 233, 103 S.Ct. at 2329.

*Gates* also provides an instructive factual backdrop for the consideration of the instant warrant because the informant's statement there was a completely anonymous letter identifying the defendants as drug dealers and describing their method of importing drugs from Florida, including the date of their next trip. The letter contained no indication as to the source, basis or reliability of the information and, as the lower court observed, the veracity of the informant was unknown and unknowable. *Id.* at 229–230, 103 S.Ct. at 2327–28. The investigating officer established a surveillance of defendants whose travel activities, while outwardly innocent, conformed to the schedule set forth in the letter. On this basis a warrant for the search of defendants' car and house was issued. The lower courts suppressed the evidence of the search on the ground that the informant's letter could not be considered. The Supreme Court, of course, disagreed.

As the Supreme Court observed in *Gates,* informants' tips come in all shapes and sizes and each case must be considered on its own facts. 462 U.S. at 232, 103 S.Ct. at 2329. Nevertheless, it is readily apparent that the issuing judge in the instant case was significantly better informed about the credibility of the informant than was his judicial counterpart in *Gates.* The informant here was not anonymous. Det. Wright personally knew the informant and swore to personal knowledge of his or her veracity. In the words of the affidavit, the informant "has on previous occasions given affiant information regarding the trafficking in controlled substances that has prov-

en to be true and correct...." It does not avail defendant to dismiss this as a mere bare bones statement. Viewed in the context of *Gates,* this averment is plainly relevant to the probable cause determination. The Supreme Court has never held that an averment of an informant's past performance was even required, let alone an account of the underlying evidentiary facts. *United States v. Harris,* 403 U.S. 573, 581–583, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723 (1971) (Burger, C.J., opinion).[14]

The other credibility factor, absent in *Gates,* also appears on the face of Det. Wright's affidavit. It clearly establishes the basis of the informant's knowledge—his or her recent *personal* observation of the methamphetamine in the possession of defendant. This must be seen, as *Gates* affirms, as a significant factor in assessing the reliability and weight to be assigned to the informant's report. 462 U.S. at 234, 103 S.Ct. at 2330.

Nevertheless, defendant frets about information missing from the affidavit; no facts are stated, for example, to show how the informant knew that it was defendant in possession of the drug or how the informant was able to identify the drug as methamphetamine. This criticism epitomizes the type of hyperthetical analysis condemned in *Gates.* 462 U.S. at 236, 103 S.Ct. at 2331. There are, no doubt, many additional facts which could reasonably have been included and which would have simplified the issuing judge's task. But the law does not require

> that each factual allegation which the affiant puts forth must be independently documented, or that each and every fact which contributed to his conclusions be spelled out in the complaint.... *It simply requires that enough information*

---

14. This case is distinguishable from *United States v. Skramstad,* 649 F.2d 1259, 1262 (8th Cir.1981) and *United States v. Schmidt,* 662 F.2d 498, 503 (8th Cir.1981), two pre-*Gates* authorities cited by defendant. Unlike the averments of previous reliability regarded as insufficient in those cases, Det. Wright does "refer[ ] expressly to incriminating or illegal activities" previously reported by this informant. *Skramstad,* 649 F.2d at 1262. Moreover, as *Gates* makes plain,

Det. Wright's statement cannot be regarded in isolation; that the informant's account was firsthand and that he or she had an obvious motive not to lie must also be considered. See also *United States v. Jackson,* 818 F.2d 345, 348 (5th Cir.1987), another case cited by defendant, which is distinguishable as there was no allegation of previous reliability at all in the affidavit under review there.

*be presented to the Commissioner to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process."*

*Gates,* 462 U.S. at 231, n. 5, 103 S.Ct. at 2328, n. 5 (quoting *Jaben v. United States,* 381 U.S. 214, 224–225, 85 S.Ct. 1365, 1370–71, 14 L.Ed.2d 345 (1965)) (emphasis added in *Gates*). Nor is the absence of corroborating evidence of consequence. Corroboration *was* important in *Gates,* but only because the informant was completely unknown and the letter, standing alone, was inadequate to validate the informant's account. The information here suffers from no such inadequacy, and further corroboration was not necessary. See *United States v. Marino,* 682 F.2d 449, 453 (3rd Cir.1982) (police not required to check out informant's tip so long as affidavit sets forth sufficient basis to credit it).

It need hardly be added that the additional information which defendant seeks could well have placed the informant at risk of exposure and retaliation. As Judge Easterbrook has noted:

> The confidentiality of many informants must be maintained to protect their safety. The drug business contains some nasty, vindictive people.

*United States v. Hornick,* 815 F.2d 1156, 1158 (7th Cir.1987). Indeed, it is this concern which justifies the informant's confidentiality. See *Massachusetts v. Upton,* 466 U.S. 727, 734, 104 S.Ct. 2085, 2088–89, 80 L.Ed.2d 721 (1984) (per curiam). But this same concern provides the informant with a strong motive not to lie. Given the potential for violent revenge and the obvious risk of identification, it seems unlikely an informant would lightly provide false information.

For these reasons I conclude that there was a substantial basis for Judge Berchelmann's determination that the informant's tip was credible.

## 2. *Probable Cause*

■ Defendant also contends that the affidavit fails adequately to establish defendant's association with the apartment or that the methamphetamine he was seen to possess would still be found in the apartment 36 hours later. It is axiomatic that probable cause must exist to believe that the items sought will be at the place to be searched at the time it is searched. *United States v. Valenzuela,* 596 F.2d 824, 828 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). However, direct observation of illegal activities at any particular time is not essential. All that is required is a "sufficient nexus between the items to be seized and the place to be searched...." *United States v. Rambis,* 686 F.2d 620, 624 (7th Cir.1982). That nexus has not been established here.

First, the affidavit is silent as to the basis for Det. Wright's belief that the apartment was in defendant's control. A conclusory assertion is not enough. *United States v. Brown,* 832 F.2d 991, 994 (7th Cir.1987). It would have been easy enough for the affidavit to inform the issuing court that the information came from the landlord, utility companies, the post office, Wright's own personal observation, or even from the informant, but none of that was indicated here. Moreover, Wright does not even say that defendant lived in the apartment: only that it was "under the control and in charge" of defendant and two others—an ambiguous statement in the circumstances which does little to inform with regard to the probable continued presence of defendant and, therefore, the controlled substance.

This flaw is compounded by the description of the single observation of methamphetamine which is lacking in detail or context sufficient to allow an inference that the drug's presence would be ongoing.

> [T]he vitality of probable cause cannot be quantified simply by counting the number of days between the occurrence of facts relied upon and the issuance of the affidavit. Together with the element of time we must consider the nature of the unlawful activity. Where the affidavit cites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with

the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant. *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972). Here, we know nothing about the drug or defendant's possession of it which would make it likely that it would still be present 36 hours later. Det. Wright's affidavit failed to present any evidence as to the quantity, location, storage or use of the drug or other surrounding circumstances which would have allowed the judge to make an informed decision as to the probability that the methamphetamine would be found at the apartment when the warrant issued.

The affidavit is even more deficient with respect to the Corvette. The only information concerning it is that it was parked in the parking lot. While it was not necessary to a probable cause determination that anybody actually saw drugs inside it (see *Valenzuela*, 596 F.2d at 828), the affidavit affords no clue as to its ownership or how it, or anything in it, related to defendant or drug possession. Simply to state that the car is "found parked in the parking lot of the above described premises" is not enough.

I therefore conclude that the warrant affidavit did not provide a substantial basis for a finding of probable cause, and that the issuance of the warrant violated defendant's rights under the Fourth Amendment.

### 3. *Good Faith Reliance*

A determination that the warrant was improperly issued does not conclude the matter. In *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 3411–12, 82 L.Ed.2d 677 (1984), the Supreme Court held that the exclusion of evidence is an issue separate from the determination that Fourth Amendment rights have been violated. As judicial officers are presumed

not to subvert the Fourth Amendment, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916, 104 S.Ct. at 3417.

In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." ... Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. at 921, 104 S.Ct. at 3419 (citation and footnote omitted). Thus, if the executing officer's reliance on the validity of the warrant is objectively reasonable, the substantial costs to society and the administration of justice of applying the exclusionary rule cannot be justified. *Id.* at 922, 104 S.Ct. at 3420.

But not all such errors are to be excused. [S]uppression remains an appropriate remedy in four situations: 1) if the affiant provides information he knows or should know is false; 2) if the magistrate wholly abandons his judicial role; 3) if the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or 4) if the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.

*United States v. Granger*, 596 F.Supp. 665, 670–671 (W.D.Wis.1984) (citing *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421).

As to the instant warrant defendant raises a serious question only as to the third issue, whether the affidavit "was so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable.*" (emphasis added) [15] This is a less exacting standard than the "substan-

---

**15.** His assertion that the warrant was facially deficient, the fourth *Leon* factor, misconstrues the object of that inquiry, which is to review technical defects on the face of the warrant such as "failing to particularize the place to be

searched or the things to be seized...." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. Here defendant raises no such question but simply reasserts his claim that the warrant lacked sufficient indicia of probable cause.

tial basis" required to uphold the warrant on review. See *United States v. Brown*, 832 F.2d 991, 994 (7th Cir.1987) (reviewing affidavit in which no substantial basis existed but indicia of probable cause were sufficient). In making this determination "[p]olice officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles." *Brown*, 832 F.2d at 995. " 'Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' " *Id.* (quoting *Gates*, 462 U.S. at 267, 103 S.Ct. at 2347–48 (White, J., concurring)), and the question can ordinarily be determined from the face of the affidavit. See *Granger*, 596 F.Supp. at 671.[16]

In this case it cannot fairly be said, with respect to the apartment, that the affidavit was lacking in indicia of probable cause. The affidavit unambiguously states that defendant was seen there with methamphetamine within the past 36 hours. Thus, there is a nexus between the premises and the contraband which goes beyond a mere "tenuous and conclusory suggestion...." *Granger*, 596 F.Supp. at 671.[17]

Although the affidavit fails to identify the basis for believing the apartment was in defendant's control, the executing officers could reasonably believe the fact to have been established. As in *Brown*, the affidavit did state on its face that the premises were "under the control and in charge" of defendant and two others, and there is no suggestion that the officers doubted that or had contradictory information. 832 F.2d at 995–996. This assertion, taken

with the fact that defendant was observed there engaging in unlawful activity, supports the conclusion that the officers acted in "objective reasonable reliance" upon the warrant. *Id.* at 995.

It follows that the officers' expectation that the controlled substances would still be on the premises was objectively reasonable. Drawing the line on how much time can elapse before probable cause ceases to exist is a question on which reasonable minds may disagree. *United States v. Marriott*, 638 F.Supp. 333, 336 (N.D.Ill. 1986), *aff'd without op.*, 826 F.2d 1067 (7th Cir.1987). The drugs were seen, at most, a day and a half earlier, and defendant has pointed to nothing that should, or did, cause the officers to believe that the drugs had, or were likely to have, been removed.[18]

I therefore conclude that reliance on the validity of the warrant was reasonable with respect to the search of the apartment, and will recommended denial of that aspect of defendant's motion.

■ As to the car, however, I can find no objectively reasonable basis for reliance on the warrant. As discussed in Part A.2, above, there is simply nothing to distinguish it, in probable cause terms, from any other car in the parking lot. At a minimum, the standard set by the Supreme Court in *Leon* charges law enforcement officers with recognizing the requirement of some kind of connection between the item to be seized and the place or object searched. See *Granger*, 596 F.Supp. at 671. Here, there is no such connection, either express or implied, between the car

---

16. As the reasonableness inquiry requires consideration of all the circumstances, *Leon*, 468 U.S. at 922–923 n. 23, 104 S.Ct. at 3420 n. 23 a hearing may be necessary in some circumstances. For example an allegation that the warrant application had previously been rejected, *Id.*, that haste or emergency may have been involved, *Granger*, 596 F.Supp. at 671 n. 4, or that the police acted as if they had no objective, reasonable reliance, *Brown*, 832 F.2d at 995, may all necessitate consideration of external evidence. No such allegation has been made here and neither party has requested a hearing nor made any representation with regard to facts outside the warrant and affidavit.

17. Even if the informant's credibility could not be sustained under the *Gates* "substantial basis" test, there can be no doubt that the affidavit contains significant indicia of probable cause which made relying on the credibility assessment reasonable. These were discussed in Part A.1 above and require no further elaboration.

18. The affidavit says the informant saw the drugs "within the past thirty-six hours," a formulation possibly designed to afford the informant a measure of security from immediate identification by the defendant. The actual time could well have been much shorter. The same language was used in the mobile home warrant.

and contraband. Nor is there anything in the affidavit to connect the vehicle to defendant or any other occupant of the apartment. Therefore, it will be recommended that defendant's motion be granted with respect to the search of the automobile.

### B. Coachman Motorhome Warrant

The warrant to search defendant's motorhome in Kingsland, Texas was based on Holly Cheatham's affidavit describing defendant's arrest for possession of one-and-a-half pounds of methamphetamine seized following the execution of the Thousand Oaks warrant and further information from a confidential informant that he or she had seen four to five ounces of the same drug in the motorhome within the preceding 36 hours. Defendant argues that probable cause has not been shown because the affidavit contains a materially false statement and because the informant's credibility was not properly established.

### 1. *Franks Issue*

■ Defendant contends that the statement in the affidavit that methamphetamine was seized from *him* is deliberately or recklessly false and material to the probable cause determination in violation of his Fourth Amendment rights under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). This contention does not require extended discussion.

Under *Franks,* a defendant is entitled to a hearing on the veracity of a warrant affidavit

> where the defendant makes a substantial preliminary showing that a false statement, knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement was necessary to the finding of probable cause....

19. More methamphetamine was discovered elsewhere in the apartment.

20. Nor is there any factual basis for the assertion that Cheatham acted willfully or recklessly.

*United States v. Balistrieri,* 779 F.2d 1191, 1205 (7th Cir.1985) (citing *Franks,* 438 U.S. at 155–156, 98 S.Ct. at 2676–77).

For his showing, defendant presents Det. Wright's report of the execution of the Thousand Oaks warrant. (Eisenberg Aff. Ex. B, Dkt. # 60) The report indicates that the apartment was rented by John Beach but defendant had been staying there and had been observed leaving before the warrant was executed. Nobody was home when the police entered the apartment. One and one-half pounds of methamphetamine were found "in a travel bag that contained numerous pieces of paper work that was [sic] in the name of Fairchild lic [sic] plates, car titles, airline tickets, etc." [19] Other evidence connecting defendant with the apartment was found and he was arrested when he returned during the course of the search. *Id.*

While the affidavit may have been technically incorrect in the implication that the drugs were taken from defendant's person, the inaccuracy was plainly not material to the issuance of the warrant. The report itself establishes defendant's ownership of the travel bag in which the drug was found, so the attribution of possession of the drug to defendant is not significantly overstated. See *United States v. Williams,* 737 F.2d 594, 604 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). Defendant has not made the substantial showing required to overcome the presumed validity of the warrant affidavit. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. See *United States v. $64,000 in United States Currency,* 722 F.2d 239, 246 (5th Cir.1984) (minor inaccuracies due to inartful drafting are insufficient).[20]

### 2. *Informant's Credibility*

■ The law on this issue has already been discussed at some length above. It may be granted for sake of argument that Cheatham's conclusory recitals that the informant was "credible and reliable" would

The report indicates that she did not participate in the search and there is nothing to suggest that she even knew of the misstatement.

be insufficient of themselves to justify the issuing court's reliance. However, these statements do not stand alone, and the existence of probable cause does not depend solely upon the informant's report. As with the Thousand Oaks informant, the informant here is a known source of information—not an anonymous tipster as in *Gates*. Secondly, the affidavit itself demonstrates that the informant spoke from firsthand observation. *Gates*, 462 U.S. at 234, 103 S.Ct. at 2330. This is corroborated by the reference to the Wisconsin license plates on the vehicle, an uncommon phenomenon in a Texas trailer park, which may be regarded as the kind of specific detail which lends added weight to an informant's report. *Gates*, 462 U.S. at 234, 245, 103 S.Ct. at 2330, 2335–36.

The information from and about the informant is sparse, to be sure, but, as *Gates* teaches, probable cause is to be determined from the totality of the circumstances and deficiencies as to some matters may be overcome by strengths in other areas. 462 US at 233. That compensating evidence is provided here by the fact (as recited in the affidavit) that defendant was a drug dealer with respect to whom a search warrant had been issued which resulted in defendant's arrest and the seizure of one and one-half pounds of methamphetamine. This information, of pristine reliability, provides unassailable corroboration to, and material-ly enhances the probable accuracy of, the informant's report of the presence of a significant amount of the same drug in defendant's motorhome.[21]

This also disposes of defendant's somewhat tentative probable cause argument. Contrary to defendant's suggestion, there is nothing particularly unusual, let alone inherently improbable, about a drug dealer maintaining a supply of drugs at more than one location or splitting up the inventory for purposes of security. As noted above, the discovery of the methamphetamine at the Thousand Oaks apartment and defendant's subsequent arrest would seem to increase, not diminish, the probability that more drugs would be found in other secure locations. See *United States v. Dubrofsky*, 581 F.2d 208, 213 (9th Cir.1978); *Valenzuela*, 596 F.2d at 829. The informant's report of having seen commercial quantities of the same drug at around the same time in defendant's mobile home was, therefore, entirely consistent with that expectation. I therefore conclude that, taken together, the information contained in the affidavit provided a substantial basis for crediting the informant's report and for a finding of probable cause to believe that methamphetamine would, in fact, be found in the motorhome. I will therefore recommend that the motion to suppress be denied.[22]

---

**21.** Defendant presents a quite involved argument to the effect that the informant should not be credited because the affidavit places defendant in Kingsland (where the motorhome was located) at the same time he was in San Antonio, 90 miles away. This argument is frivolous. The affidavit does not say that defendant was in Kingsland. The informant reported only that he or she had seen the methamphetamine in the motorhome within the preceding 36 hours. When or whether defendant himself was seen is not stated. Secondly, no reason appears, in any event, why defendant could not have been in Kingsland at some time during the eight-hour period between 7:40 a.m. on August 27 (thirty-six hours before the motorhome affidavit was sworn at 7:40 p.m. on August 28) and his sighting in San Antonio around 3:45 p.m. on August 27. (Det. Wright's report, Eisenberg Aff., Ex. B., Dkt. # 60)

**22.** Defendant also contends that suppression is required because the warrant was issued by a justice of the peace, and not a judge or federal magistrate, in violation of Fed.R.Crim.P. 41(a). Despite the length of his discussion, this argument is groundless. It is settled law in this circuit that "foibles in the administration of Rule 41 are not grounds for exclusion." *United States v. Hornick*, 815 F.2d 1156, 1158 (7th Cir. 1987). In the absence of a violation of the rule which also offends the constitution, suppression is not a remedy. *Id.* Defendant does not suggest that warrants issued by a justice of the peace violate the Fourth Amendment, and for good reason. The Supreme Court has rejected the proposition that a warrant must be issued by a judge or even a lawyer. *Shadwick v. City of Tampa*, 407 U.S. 345, 348–350, 92 S.Ct. 2119, 2121–23, 32 L.Ed.2d 783 (1972). Further, there is no evidence of any intentional or reckless violation of the rule. Defendant represents that Cheatham, the affiant, was actually a San Antonio police officer on assignment with a DEA task force. (Rep. Br. at 4, Dkt. # 116. See affidavits of Anderson, Dkt. # 112; Eisenberg, Dkt. # 117) Given this status, it seems likely that she was not even aware of Rule 41.

### C.  Lyden Mini–Warehouse

In contrast to the other two affidavits, Agent Staber's affidavit supporting the mini-warehouse search overflows with detail.  It describes defendant's possession of several pounds of methamphetamine in Texas in October 1988.  His arrest for those deeds did not deter his criminal activity.  He reportedly moved his operation to the vicinity of Eau Claire, Wisconsin, and brought along a five-year supply of raw materials to carry out the task.  Defendant's manufactory was believed to be the residence of his brother-in-law, Gregory Bowers (a suspected accomplice), a place frequented by defendant.  That residence was the scene of suspicious activities, and consumed inordinate quantities of electricity—a necessary ingredient to the manufacture of methamphetamine.  One mini-warehouse attributed to defendant was discovered by accident and was found to contain materials and ingredients used in the manufacture of methamphetamine.  This conformed to defendant's known practice of using mini-warehouses to store laboratory supplies.  Another mini-warehouse, rented by Bowers, was to be the subject of the instant search.  Defendant urges that this affidavit, too, is insufficient.

#### 1.  *Privacy Interest*

■  This motion presents a quite obvious issue concerning defendant's standing to contest the search.  The mini-warehouse was rented to defendant's brother-in-law, Gregory Bowers, not to defendant, and no other interest of defendant is apparent.  For that reason alone, the challenge to this warrant must be rejected.[23]

It is settled law that a person cannot vicariously assert a violation of someone else's Fourth Amendment rights.  *Rakas v. Illinois*, 439 U.S. 128, 133–134, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387 (1978).

A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment Rights infringed.

*Id.* at 134, 99 S.Ct. at 425–26.  It follows that a movant has the burden of establishing that he or she had a legitimate expectation of privacy in the place searched which was violated by the search.  *United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 2554–56, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980).

That burden has not been met here.  Indeed, one of defendant's challenges to the probable cause determination is that there is nothing to connect him with the warehouse.  I agree.  That aside, defendant has presented absolutely nothing to suggest any interest whatsoever in the property.  To be sure, his co-conspirator, Bowers, had a significant privacy interest in the warehouse, but that does not create a vicarious expectation of privacy in defendant.  *United States v. DeLeon*, 641 F.2d 330, 337 (5th Cir. Unit A. 1981).[24]

In short, defendant has not even attempted to establish that his Fourth Amendment rights were violated by the search of the Lyden mini-warehouse and his motion to suppress must be denied on that ground alone.

#### 2.  *Sufficiency of Affidavit*

■  Even if defendant were able to establish a recognized privacy interest in the mini-warehouse, the motion would still be without merit.  Defendant raises only two issues concerning the affidavit: (1) that it contains no information to credit the informant who provided information to Det. Wright about defendant's Wisconsin drug

---

**23.**  The government has not raised this issue, so it has not been addressed in the briefs.

**24.**  Though defendant has made no effort to do so, it ought also be noted that a showing of an interest in the property seized is not enough.

> [T]he Supreme Court has held that ownership of property is insufficient to give the owner an expectation of privacy requisite to challenge its seizure.  The owner must also have a

reasonable expectation of privacy in the place in which the personal property is located.  W. Ringel, 2 *Searches & Seizures, Arrests and Confessions*, § 20.3(b)(1) at 20–16, 20–17 (1989 ed.) (footnotes omitted).  See *Rawlings*, 448 U.S. at 105–106, 100 S.Ct. at 2561–62 (petitioner's claim to ownership of drugs found in another person's purse are not enough to establish expectation of privacy).

manufacturing activities and (2) that there is no nexus between those activities and the Lyden mini-warehouse.

The informant told Det. Wright that defendant was residing in a home in Fairchild, Wisconsin, was running a methamphetamine laboratory in that area, and was storing chemicals for the laboratory in a mini-warehouse in Eau Claire. While it is true that there is no information regarding either basis of knowledge or veracity, the informant's tip was substantially corroborated. Defendant's frequent presence at his brother-in-law Bowers' residence in Fairchild allowed the inference that he was living there or in the vicinity. A mini-warehouse used to store chemicals and equipment associated with the manufacture of methamphetamine was found only a few miles from Eau Claire, in Chippewa Falls.[25] It would be reasonable to conclude from this that a drug laboratory was nearby, and the suspicious activities at the Bowers' residence—the enormous consumption of electricity and the unusual activity in the early morning hours—pointed to the residence as the likely location given defendant's past record. Indeed, Det. Wright's informant was so well corroborated that the tip itself can hardly be said to have been of more than marginal value in the probable cause calculus. There was no error in the affidavit's failure to develop further information regarding the source.

■ Defendant does not contend that the affidavit fails to present sufficient information to conclude that there was a conspiracy to manufacture methamphetamine or that a laboratory for that purpose existed. Instead, he argues that there is no nexus between the production of methamphetamine and the mini-warehouse. I disagree.

It is true that the affidavit presents no information about the actual contents of the mini-warehouse. However, direct observation of contraband is not required.

Whether there is a sufficient nexus between the items seized and the place to be searched to establish probable cause depends on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences about where a criminal would hide the items.

*Rambis,* 686 F.2d at 624.

Defendant was believed to be running a methamphetamine laboratory out of his brother-in-law Bowers' residence and with his cooperation. He was believed to use mini-warehouses to store laboratory supplies. This belief was confirmed when one such mini-warehouse was discovered. The subject of the search was a second mini-warehouse which had been rented by his co-conspirator, Bowers. A normal inference allows the conclusion that laboratory supplies would also be stored there. The discovery of the first mini-warehouse did not diminish the likelihood that a second might be found or that it would contain more drug supplies. Given the suspected magnitude of the operation, it would be reasonable to suppose that not all of the manufacturing equipment and raw materials would or could be stored in one place. Considerations of security and continuity would suggest that the operator of an illicit drug laboratory could be expected to use more than one storage facility (and perhaps rent them under false names). The need for a second warehouse is further corroborated by the report that defendant had brought a five-year supply of raw materials with him to Wisconsin.

■ Defendant appears to contend that the information in the affidavit cannot allow the inference that probable cause existed when the warrant was issued on May 31, 1989. It is true that there is no information concerning wrongdoing following the discovery at Mueller's warehouse three weeks earlier, and the citizen witness' report is ambiguous as to dates. However, this operation was ongoing and of a large-scale. The affidavit reveals that the large consumption of electricity at the Bowers' residence had been nearly continuous since November 1987. Moreover, as defendant's continuation of his operations following his arrest in Texas indicates, the issuing judge

---

**25.** While the identification of the actual occupant of that space was unclear, the authorities could hardly ignore the fact that another unit (occupied by a major corporation) was leased to a fictitious Phillip J. Bowers whose address was a post office box rented by defendant and whose phone was listed under the name Gregory Bowers.

was not required to assume that the illegal activity had come to an end simply because the police had discovered one of the warehouses. But even if the manufacturing had stopped, it is more likely than not that the equipment and supplies would have been removed from the residence to some isolated and secure place—such as a miniwarehouse.

For all these reasons, I conclude that there was a substantial basis for the issuing judge's decision that evidence of drug manufacturing would be found in the Lyden mini-warehouse rented by Gregory Bowers. It will therefore be recommended that this motion to suppress also be denied.

## RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that defendant's motion to suppress the Thousand Oaks warrant (Dkt. # 70) be DENIED with respect to the apartment search and GRANTED with respect to the automobile search and that the motions to suppress the Coachman motorhome warrant (Dkt. # 59) and the Lyden mini-warehouse warrant (Dkt. # 75) be DENIED.

ENTERED this 13th day of April, 1990.